## EQUITY—CANCELLATION OF DEED—MENTAL CAPACITY—UNDUE INFLUENCE.

[Morrow (5th) Circuit Court, June Term, 1902.]

Douglass, Voorhees and Donahue, JJ.

### EMMA KIME v. JOHN ADDLESPERGER AND MARY ELLEN ADDLESPERGER.

1. DEED GIVEN UPON CONSIDERATION OF LIFE SUPPORT OF GRANTOR AND SUPPORT OF GRANTOR'S DAUGHTER AND PAYMENT OF DEBTS OF GRANTOR IS UPON A VALUABLE CONSIDERATION.

   A deed executed and delivered by a father to a son in consideration that the son will care for his father, furnish him the necessaries of life, and all that his condition required, and also furnish a home and the necessaries of life for his daughter, M, who was living with her father, and pay all the debts then owing by the father, is a conveyance upon a valuable consideration.

2. FACTS CONSTITUTING SUFFICIENT MENTAL CAPACITY TO EXECUTE DEED.

   In the absence of fraud or undue influence, mere weakness of intellect, resulting from old age or sickness, is no ground for setting aside an executed contract. The measure of mental capacity in such case is, that the contracting party be capable of comprehending the condition of his property, his relations to those who are the natural objects of his bounty, and to reasonably understand the nature and effect of what he is doing.

3. RULE AS TO BURDEN OF PROOF IN SUCH CASE.

   Where the act of making the deed is in itself reasonable and proper and furnished no intrinsic evidence of mental incapacity, the burden is on the party assailing the act to show the incapacity of the grantor at the time the deed was made.

4. SAME—THE RULE AS TO BURDEN OF PROOF IS NOT CHANGED IN CASE OF PARENT AND CHILD, WHEN.

   The fact that one of the parties to the deed or contract is old, and the father of and living with the grantee, does not raise a presumption of inequality between them, as to impose upon the latter the burden of proving affirmatively that no fraud was practiced, or undue influence used, and that all was fair, open, voluntary and well understood. While these relations are, as matter of fact, consistent with weakness and confidence on the one side, and strength and undue influence on the other, this is not necessarily presumable from the relations themselves, and fraud and undue influence must be shown in order to cast the burden of proof upon the grantee.

HEARD ON APPEAL.

F. O. Levering and W. D. Mathews, for plaintiff, cited:

Parental or *quasi* parental relation will raise the presumption of fraud or undue influence. Nor does this presumption cease when child becomes of age, but continues until there is a complete emancipation. See Clark

Contracts, 366, 367; Berkmeyer v. Kellerman, 32 Ohio St. 239, 250, 254 [30 Am. Rep. 577].

That the term parental relations extend to all cases in which one member of a family from age, character or circumstances, exercise a substantial preponderance of authority in the family councils. Clark Contracts 367.

The same influence of child over an aged and feeble parent is presumed to exist, or may exist, of parent over child. 2 Beach Contracts 1824.

That in order to establish this alleged fact, a fair preponderance of evidence is all that the plaintiff is required to produce.

And not as in criminal cases, in order to convict a person of crime that the evidence must satisfy the mind of the jurors beyond a reasonable doubt, and in such cases the burden of proof shifts to the defendant. Davis v. Bartlett, 12 Ohio St. 534, 546 [80 Am. Dec. 375] ; Kelch v. State, 55 Ohio St. 146 [45 N. E. Rep. 6 ; 39 L. R. A. 737 ; 60 Am. St. Rep. 680].

Duty cast upon the grantee of showing, affirmatively, that the grantor clearly understood the nature and effect of the transaction, and voluntarily executed the instrument. Baugh v. Buckles, 1 Circ. Dec. 607 (2 R. 498); Tracy v. Sacket, 1 Ohio St. 54, 55 [59 Am. Dec. 610] ; Cowee v. Cornell, 75 N. Y. 91, 99 [31 Am. Rep. 428] ; 2 Pomeroy Eq Jurisp. 943.

As to undue influence where confidential relations exist. 1 Story Eq. Jurisp. 314, n.

And the burden shifts to the grantee to show that all was fair, etc. Deeds of insane persons are absolutely void. 2 Beach Contracts, Sec. 1390.

An advancement to husband and wife jointly cannot be charged against the wife in severalty, unless it is shown that she knew intention of the ancestor, and acquiesced therein. Boyer v. Boyer, 7 Dec. 525 (7 N. P. 153); See Digest Circuit Dec. 14; Needles v. Needles, 7 Ohio St. 432 [70 Am. Dec. 485]; Stayner v. Bower, 42 Ohio St. 314; Dittoe v. Cluney, 22 Ohio St. 436.

L. K. Powell and J. W. Barry, for defendant, cited:

Consideration other than that mentioned in the deed may be shown by parol. Jamison v. McNally, 21 Ohio St. 295.

Undue influence is an issuable fact and must be proved by the party alleging same, except where they are not on an equality, when the burden shifts to the party receiving an advantage from the transaction. For cases on this subject see Robinson v. Allbee, 4 Circ. Dec. 185 (12 R. 663) ; Pepple v. Pepple, 7 Circ. Dec. 102 (13 R. 43); Keck v. Sayre,

4 Dec. 195 (3 N. P. 45); Baugh v. Buckles, 1 Circ. Dec. 607 (2 R. 498); Tracey v. Sacket, 1 Ohio St. 54 [59 Am. Dec. 610]; Hardy v. Van Harlingen, 7 Ohio St. 209, 216; Berkmeyer v. Kellerman, 32 Ohio St. 239 [30 Am. Rep. 577]; Vanzant v. Davies, 6 Ohio St. 52; Christmas v. Spink, 15 Ohio St. 600; Brice v. Myers, 5 Ohio 121; Corbit v. Corbit, 7 Re. 692 (4 Bull. 1006).

Gifts to son-in-law intended as an advancement to the daughter will be so charged. Dittoe v. Cluney, 22 Ohio St. 436.

The value of the life estate of William Addlesperger calculated at seventy-eight years of age, according to the American experience table of mortality, in said lands was $838.80. The value of the life estate of Mary Ellen at fifty years was $2,095.20. The debts to be paid estimate $500, making a total of $3,434, as consideration paid by John Addlesperger for said land. Kinkead Probate Law & Practice 492.

**VOORHEES, J.**

This action comes into this court on appeal; and the object of the plaintiff's suit is to set aside a deed that was made by one William Addlesperger to his son, the defendant, in 1898.

The grounds on which it is sought to set aside the deed are:

First. That the grantor, at the time the deed was made, in December, 1898, was not of sound mind, or had not mental capacity sufficient to make a contract.

Second. That by reason of his age, infirmity of body and mind, he was easily influenced, and the defendant, taking advantage of his physical and mental condition, induced him to make the deed to him, without consideration, and as a fraud upon the grantor and those who were the proper objects of his bounty.

The contention of the plaintiff is, that by making this deed, the old gentleman had deprived himself of his property, and the son who received it (they living together in the same family) exercised such influence over his father that it was undue influence and fraud, and undue influence would be presumed, from the relation they sustained to each other. And to more concisely state the issue, the plaintiff claims the grantor, at the time the deed was made, was not of sufficient mind to make a contract, and that the deed and contract were not his free act, but was the result of undue influence exercised over him by his son, who was the grantee named in the deed.

The defendant denies that his father was not of sound mind and memory, but on the contrary, that he was at the time the deed was made, able to and did comprehend the business in which he was engaged; that it was his free act and deed, voluntarily entered into, and

the grantor, by making this arrangement, secured to himself what would be an adequate and fair consideration for the premises conveyed.

Taking up the case in this order: The first inquiry is, was the old gentleman, at the time this deed was made, capable mentally to make a contract? A good deal of evidence has been introduced by the respective parties, bearing upon this issue. In addition to the testimony that has been introduced, it is necessary to look at the circumstances surrounding the parties at the time the deed was made, for the reason that the circumstances and the purpose for which the contract was entered into throw light upon the transaction as to whether it is reasonable or otherwise; and the situation of the parties at the time the contract was executed is important and bear upon the question involved as to mental capacity.

Briefly referring to the situation of these parties: Some years before this transaction occurred, the old gentleman's wife had died, leaving him alone, excepting for a daughter who was, it seems from the proof, while physically well and able to take care of herself, mentally she was not up to the average; and therefore the father was concerned as to her welfare, and had reason to provide for her future in any disposition that he might make of his property. After his wife died, the plaintiff, who had been married perhaps about a year, went with her husband to live in the home of her father; they lived there some twelve years, during which time the plaintiff's husband managed and had charge of the farm upon which the old gentleman lived, and which is the same property that is here in controversy. During the series of years that the plaintiff and her husband lived with the old gentleman, there were changes made in their arrangements and contract as to the occupancy of the premises; the last change that was made, it was agreed that Mr. Kime was to pay the old gentleman fifty dollars a year as rent. In the year 1898, by reason of the failing health of Mrs. Kime, the plaintiff, they were unable to longer continue to live under the arrangement that had been made theretofore, and she became unable to longer take care of her father and render him the assistance necessary for his comfort.

It does not appear from the evidence that there was any trouble between the father and daughter, but by reason of her physical inability to longer discharge the duties they had assumed, they voluntarily left the place.

The old gentleman was unwilling, or at least did not wish that his daughter should leave, but desired they should remain on the place and discharge the duties they had assumed. When they were about to leave, and before they did so, the old gentleman and Mr. Kime went to

Kime v. Addlesperger.

the defendant, a brother of plaintiff who was living at that time some fourteen miles away from where the old gentleman resided, and their mission was to see if he would move upon the farm and take charge of his father and farm the place. If such arrangements could not be effected with the son, the defendant, the old gentleman had in mind and intended to select some stranger to live with him and manage the farm. But when his wishes were made known to the defendant, he promptly and willingly said he would move on the farm, live with his father and take care of him, all of which he did.

To this time, and up to this point in the history of the case, there is no evidence that the defendant ever sought this position. It was not a position that he was seeking; he had no object or purpose in moving on the place whereby he could secure influence over his father, but when he found his sister and brother-in-law were about to leave he was willing to go and assume the obligations of looking after the wants of his father and manage the farm rather than have a stranger do so.

Soon after defendant had moved with his family on the farm the old gentleman called his attention to the condition of the farm; that it needed repairs and there would have to be some expenditure of money on the farm, in order that it be useful and serve the purpose for which he desired, namely, to secure for himself a comfortable home, care and support.

The old gentleman wanted defendant to make the needed repairs; the defendant informed him that he would not, as he didn't desire to put his money into the farm unless it was secured in some way. The old gentleman then proposed he would make him a deed, provided the defendant would enter into a contract with him agreeing to take care of his father, furnish him the necessaries of life, and all that his condition required; and furnish a home and the necessaries of life for his daughter, Mary Ellen, who was living with her father, and pay all the debts then owing by the old gentleman.

The proposal made was accepted by defendant, and in consideration thereof the deed in question was executed and delivered, and the defendant executed a writing which is equivalent to a life estate in this property in favor of the father as long as he lived, and also in favor of the daughter, Mary Ellen, as long as she lives.

Some discussion occurred between the father and the son, as to who should do this business or get up the necessary papers. The old gentleman selected a friend, an acquaintance that he had, who lived some distance from his home; but at the time the papers were to be executed the weather was unfavorable, and a suggestion was made by the defend-

ant that another friend and acquaintance of his father, who lived more convenient than the first, might be secured if satisfactory to his father. The other person suggested was a justice of the peace by the name of Van Buskirk, who was accordingly selected. He was sent for, the defendant going for him; a circumstance that may be considered in cases of this character; where a beneficiary of a conveyance is instrumental or an active agent in bringing it about, is a circumstance that may be properly noticed in connection with the whole transaction. Mr. Van Buskirk, the justice of the peace, went to the old gentleman's home, prepared a deed and lease; and they are executed before him as such officer. There is a circumstance that occurred between the officer and the old gentleman I will call particular notice to as bearing upon the two questions: First, as to capacity of the old gentleman, and also upon the question of undue influence, or free agency of the old gentleman in making the deed.

After the papers were prepared the old gentleman had a private conversation with Mr. Van Buskirk, which shows what was in his mind at that time. After he had executed the deed he said to the justice that he was not certain that he had done just right by Emma, his daughter, but expressed no desire to change what he had done.

This is briefly the history of the transaction that preceded and immediately followed the making of the deed. The question is whether or not, at the time the deed was made, had the old gentleman capacity to comprehend his situation and the business in which he was engaged. It would seem from the circumstances referred to that he unquestionably had in mind the objects of his bounty.

He also had in mind and contemplated the effect that the deed and lease would have upon himself, as well as the objects of his bounty, and he knew the condition of his property ; and the testimony shows he secured for himself care and attention during the remainder of his life, the contract, or life lease to himself, and the support of his daughter Mary, and he had also in mind his other daughter Emma, the plaintiff, when he said he did not know whether he had done just right by her.

These are circumstances and elements tending to show capacity to make a will; and while we cannot take any one case and say it furnishes a distinct and clear rule, as each case must largely depend upon its own surroundings and circumstances, yet there are some general principles that apply and are applicable to all cases of this character, and among them is the rule, that the degree of mental capacity to make a contract or will is that, one who is capable of comprehending the condition of his property, and his relations to those who are the natural objects of his bounty, and is able to collect and retain in mind, without

prompting, the elements of his business, possesses capacity to make a testamentary disposition of his property.

It is not expected that men, when they become advanced in years, retain the same mental powers that they possessed when young; that cannot be expected, and the law does not contemplate such conditions; if that were required, it would be impossible for a large proportion of men to dispose of their property in the latter part of their lives when such dispositions are usually made. A person's memory may be impaired, his body weak and feeble; he may not be able to labor, or do business as when young; he may ask foolish questions, repeat questions and conversations, and, in the language of some of the books, he may not be always able to recognize his neighbors and friends; yet that does not determine whether he has capacity to transact ordinary business, or such business as we have here under consideration. And we further recognize the rule, that to make a contract requires more ability than to make a will, for the reason, in a contract there are two parties and their interests are antagonistic; hence the rule is that it requires more capacity to make a contract than a will. Yet, there is another principle not to be overlooked, and that is, that a deed, often, is, in a sense, testamentary in its nature, and when such is the case the act is to be tested by the degree of capacity required to make a will. We think in this case the deed is of a testamentary nature.

The old gentleman, at the time he made this deed, had reached a point in life that it was necessary for him to make some disposition or change as to his property; that is, his property must furnish him support, and he needed some one to take charge and care for him, and his property must be the means for furnishing support, care and attention. The favored daughter, the plaintiff, was the one, no doubt, he desired should live with him during the remainder of his life, but she was unable to discharge that duty, and left him alone, and he had to look elsewhere for some one who was able and willing to discharge that duty.

Coming more directly to the question of his mental capacity, and believing the rule does not require that high degree of capacity that a man's memory must be just as perfect as it ever was, or that his physical ability as good as it was in former years; but that he may be enfeebled in mind and body so that he will not be able to fully, at all times, comprehend his situation or surroundings, and at times forget his neighbors and friends, those with whom he was well acquainted in former years; nevertheless when it comes to a question of capacity to dispose of his property, a subject upon which he may have reflected much when in full vigor of mind and body, these failures of memory and infirmities of age are not sufficient to overcome the principle that he has

a right to dispose of his property, if he is competent and able to comprehend his situation, the purposes and objects of the business in which he is engaged and recognizes and knows the objects of his bounty, and the condition of his property.

If this is a correct test of capacity we think there is no evidence whatever in this case to show that this old gentleman, when this deed was made, had reached a condition of mental weakness that incapacitated him from making the disposition of his property that he did make to his son, the defendant.

Second. Was there undue influence? As a general rule fraud and undue influence must be proved by him who alleges them, but they may, in certain cases, be inferred from circumstances, as in the execution of a deed, where the grantor was partially incapacitated by mental infirmity, or was subject to the controlling influence of the grantee, if it appears that the deed was without valuable consideration, or that the grantee acquired an undue advantage by its execution. Under such circumstances the burden is upon the grantee to show affirmatively that the grantor clearly understood the nature and effect of the transaction, and voluntarily executed the instrument.

The evidence in this case fails to show any of these conditions or circumstances, unless it be that the grantor, William Addlesperger, at the time he made the deed in question was mentally and physically infirm; and from the relation between the grantor and grantee, that of father and son, the burden is cast upon the defendant, the grantee, to show that the grantor clearly understood the nature and effect of the transaction, and that he voluntarily executed the deed.

Whenever the relation between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality, but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, then the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood. This doctrine is well settled, but there is often great difficulty in applying it to particular cases.

The law presumes in the case of guardian and ward, trustee and *cestui que trust*, attorney and client, and perhaps physician and patient, from the relation of the parties itself, that their situation is unequal and of the character defined; and that relation appearing itself throws the **burden upon the trustee, guardian or attorney of showing the fairness**

of his dealings. But while the doctrine is without doubt to be extended in many other relations of trust, confidence or inequality, the trust and confidence or the superiority on one side and weakness on the other, must be proved in each of these cases; the law does not presume them from the fact that one party is father and old, and the other a son and young. The question as to parties so situated is a question of fact dependent upon the circumstances in each case. There is no presumption of inequality either way from the relationship shown in this case.

It cannot be said that from the fact the defendant lived on the farm with his father under the contract of life lease, and cared for him, paid his debts, furnished support for the daughter Mary Ellen, as provided for in the lease, or at the time the defendant went to live with his father, that the father needed some one to take charge of his farm, and care and provide for himself and his said daughter, or that at the time he was old, forgetful, and in conversations would dwell on events of his early life and did not engage actively in any business, and, on the other hand, the defendant, his son, lived in the same house, going there at the solicitation of his father and the son-in law, Kime, taken separately or together raise a conclusive presumption of law that their situation was unequal and fiduciary. These relations, as matter of fact, may have led to or been consistent with controlling influence on the part of the son or weakness and confidence on the part of the father, but this was to be shown, and is not necessarily presumed from the relations themselves, as in the case of trustee, guardian or attorney.

There is not a particle of evidence that the old gentleman, after this deed was made, ever complained about it, or that the defendant did not faithfully perform the contract on his part. There was no secrecy about the execution of the deed; it was placed on record without delay; no effort to conceal the transaction from the plaintiff or any one interested in the grantor or his estate.

We find as a fact that there was no undue influence used by the defendant to procure the deed, and the execution thereof was the free and voluntary act of the grantor. It was contended that there was not a sufficient consideration for the land conveyed, and, therefore, the deed is fraudulent and should be set aside. The fact that the deed was made to the son of the grantor is a circumstance to be considered in connection with the sufficiency of the consideration. If the old gentleman had mental capacity sufficient to transact ordinary business, and was free from restraint and undue influence, he had a right to make such disposition of his property as he thought proper.

A father has a right to dispose of his estate in any way he may deem best. He is not required to make an equitable distribution of his

estate, among even the objects of his bounty. He may, if he choose, exclude his 'children, or divide his estate among them unequally. The question in all such cases is, was the act the free act of a competent party?

On the other hand, while a son or daughter has no legal demand upon the parent as to how he will distribute his property; yet courts of equity will not vacate a deed obtained by means of influence or importunity unless it has been unduly or improperly exercised. Fair argument and persuasion, or appeal to the conscience or sense of duty of the grantor, especially by those having claims upon his justice or his bounty, if fairly made, lay no foundation for vacating a deed, although the grantor would not have executed it, but for such appeal, argument or persuasion. Truman v. Lore, 14 Ohio St. 144-156.

The defendant in the case at bar assumed to pay the debts of his father, the amount of which was uncertain; he was to furnish his father with support, care and attention as long as he lived, and a home and maintenance for his sister Mary so long as she lives. The extent of any one or all of these assumed burdens on the part of defendant was uncertain, and will continue so long as Mary lives, yet the defendant assumed them and secured the faithful performance thereof, by executing an instrument in writing called a life lease to his father and sister, which are a lien upon the farm as much so as if he had executed a mortgage. There is no pretense or claim made by plaintiff that defendant has not faithfully carried out his part of the contract so far as the father was concerned, and the sister, although a party to this action, makes no complaint that he is not doing the same so far as she is concerned.

We think under these circumstances there is not such want of consideration as to be evidence of or raise any presumption of undue influence against the defendant.

This case is clearly distinguishable from the cases cited by counsel for plaintiff, not only as to the facts, but as to the application of the law to the facts.

In the case of Tracey v. Sacket, 1 Ohio St. 54 [59 Am. Dec. 610], the grantee was a stranger to the grantor. He failed ignominiously in carrying out the contract he had entered into with the grantor.

In the case of Allore v. Jewell, 94 U. S. 506, the grantee was a stranger to the grantor. The grantor was an old lady of great mental weakness and the consideration was grossly inadequate.

The case of Corbit v. Corbit, 7 Re. 692 (4 Bull. 1006). The facts in that case are so materially different from the facts in the case at bar it can hardly be considered an authority in this case. The principles

of law there announced are correct, and when the facts warrant, their application should be controlling.

We have gone over the main features of this case; and it will be observed we have confined ourselves largely to circumstances, rather than a repetition of the testimony of witnesses, in which there is much conflict. Lawyers know that in cases of this character, and upon such issues conflict in the evidence is naturally expected. Witnesses, non-experts, come in and give their opinions, and it is pretty difficult to arrive at a conclusion that will harmonize with all the evidence, the transaction itself and the circumstances must furnish the rule for the solution of the question. Courts are not expected to make wills or contracts for parties if they have capacity to make them, and are free from undue influence.

When the plaintiff's father recalled to his mind the fact, whether he had done just what he ought to have done for her, he did not see proper to change his arrangements, therefore the court cannot change it for him. The decree will be for the defendant; the plaintiff's petition dismissed.