SCHOCH, APPELLANT, *v.* BLOOM, D. B. A. HERMAN BLOOM
REALTY CO., APPELLEE.

(No. A176273—Decided October 22, 1965.)

*Mr. Cedric Vogel,* for appellant.
*Messrs. Bloom, Greene, Thurman & Uible,* for appellee.

RENNER, J.  This case is here on an appeal from a judgment rendered for the defendant-appellee, Herman Bloom, on a motion by the defendant at the close of the evidence offered by plaintiff-appellant, Charles Schoch, in chief.  The parties here will be referred to as they appeared in the lower court.

Plaintiff's petition is based upon a written contract of employment between the plaintiff as a real estate salesman and the defendant, a real estate broker, which is dated November 6, 1958.

The petition consists of three causes of action in each of which the plaintiff claims that the defendant is indebted to him for real estate commissions on separate contracts to purchase real estate owned by Herbert and Ed Kroeger.

The principal contract between the plaintiff and the defendant is in evidence identified as plaintiff's exhibit No. 1. Two of the contracts of purchase of Kroeger property are also in evidence, marked plaintiff's exhibits Nos. 2 and 3.  The third

contract of purchase is not in evidence but it was stipulated that on or about December 1, 1958, a contract of purchase was executed by the Finks and the Kroegers. The evidence also discloses that the plaintiff, as salesman for the defendant, had negotiated the three purchase contracts.

Plaintiff was the only witness to testify and the only other evidence was the employment contract and the two contracts of purchase, exhibits Nos. 2 and 3, and also the stipulation as to the third contract of purchase.

The contract between the defendant and Charles Schoch, the plaintiff, is dated November 6, 1958, and it consisted of twelve paragraphs, covering various commissions and obligations of the parties with reference to commissions to be paid to the plaintiff on various classes of real estate. Paragraph No. 3 provided that plaintiff was to receive forty-five per cent of the gross commission on Kroeger built new homes, but paragraph No. 6 provided that sales contracts for Kroeger built new homes were not to be considered a sale until transferred to the client and that the salesman must be in the employ of the broker. Paragraph No. 9 provided that all deposits were the property of the broker and that if the deposit equaled the commission and was forfeited, it was to be divided equally between the broker and the salesman, less expenses for collection. The final paragraph No. 12 provided that the agreement was to become effective on November 6, 1958, and that it pertained to all previous transactions and that it would continue for six months.

Plaintiff testified that he was employed from September 1, 1958, to February 23, 1959, by the defendant as a salesman. The evidence does not disclose why or under what circumstances plaintiff's employment by the defendant was terminated approximately two and one-half months before the expiration of the contract.

The two contracts of purchase which are in evidence provided that the offer and acceptance of the offer constituted the entire agreement of the parties, and no oral or verbal or implied agreement or understanding shall cancel or vary the terms of the contract.

The evidence discloses that two of the three contracts of purchase secured by the plaintiff were never consummated;

that in each of those instances $500, which was one-half of the down payment, was forfeited by the buyers. The evidence further reveals that the third contract of purchase was consummated on May 5, 1959, several months after plaintiff's employment by the defendant had ceased.

Paragraph No. 6 of the contract between the plaintiff and the defendant clearly and precisely states that "Sales Contracts for Kroeger built homes are not considered a sale until transfered to client; salesman must be in our employ."

The law is firmly established that courts may not interpret that which is otherwise clear and unambiguous and that where a writing is worded in clear and precise terms, and where its meaning is evident and tends to no absurd conclusion, they are to be taken and understood in their plain, ordinary and popular sense. Another fundamental rule of law is that courts may not extend their jurisdiction and powers to construe plain and unambiguous language to relieve parties competent to contract from hardship and may not relieve them from an improvident agreement in the absence of fraud or bad faith. 11 Ohio Jurisprudence 2d, Contracts, Section 133.

Applying these rules of law to the facts presented by the evidence offered on behalf of plaintiff, the plaintiff was bound by the provisions of paragraph No. 6, and he was not entitled to forty-five percent of whatever commissions the defendant may have received on either of the two contracts of purchase which were not consummated. Likewise he was not entitled to a commission on the sale which was consummated on May 5, 1959, when the plaintiff was no longer employed by defendant.

Counsel for the plaintiff contends that paragraph No. 9 of his contract with the defendant entitled him to recover one-half of the deposits which were made on the two contracts which were forfeited. Section paragraph No. 9 provides that "All deposits are the property of the broker. If deposit equals commission and forfeited, to be divided equally between Broker and Salesman, less expenses for collection."

The two contracts of purchase, which are in evidence, specifically provided that "Said deposit shall be held by Real Estate Broker as trustee for the Seller and Purchaser, pending the delivery of title and settlement of the transaction. Said deposit shall be promptly returned to Purchaser in the event

Seller does not accept this offer in accordance with its terms.''

The evidence does not disclose that the third contract had a similar provision. Nevertheless, a broker's relationship is that of a trustee for the seller and the purchaser regarding a down payment which is entrusted to the broker in the absence of a specific agreement to the contrary. By paragraph No. 13 the plaintiff and defendant attempted to convert past and future deposits in the hands of the defendant, as trustee, to their own use. Such provisions are contrary to public policy and law, and paragraph No. 13 was void *ab initio*.

''* * * A fiduciary must also exercise the utmost care not to divert funds entrusted to him from the purposes of the trust.

''The trust must always be administered for the benefit of the cestui que trust, and a contract, though made with honest purpose, which in no case could be held reasonable will not be enforced. Good intentions will not relieve the trustee from responsibility for negligent or improvident conduct. Like other fiduciaries, a trustee owes his beneficiary a duty of good faith and loyalty. A fiduciary must act in accordance with the highest standard of integrity, with utmost good faith, and with scrupulous openness, fairness, and honesty. 54 Ohio Jurisprudence 2d Trusts, Section 186, pp. 115 and 116.

''The rules of law relating to loyalty of a fiduciary to the beneficiary, while hard and severe, are, for the most part, constant and immutable, because they are grounded on the principles of honesty and integrity which are changeless and eternal. The lasticity of these rules of loyalty extends their applicability to all of the devices invented by unfaithful fiduciaries to evade their obligations or to defeat the imperative demands of business integrity and sound public policy.'' 23 Ohio Jurisprudence 2d, Fiduciaries, Section 20, p. 559.

Chapter 4735 of the Revised Code of Ohio, relating to the appointment and conduct of brokers or real estate salesmen, also charges them with good faith and loyalty to their principal beneficiaries and other persons reposing trust or confidence in them.

In conclusion I find that there was no error prejudicial to the rights of the plaintiff in the trial court, and the judgment of that court is affirmed.

*Judgment affirmed.*