OLMSTEAD, TRUSTEE, ET AL., APPELLEES, *v.* THE LUMBERMENS MUTUAL INS. CO., APPELLANT.

186

(No. 10728—Decided April 21, 1969.)

*Messrs. Goodman & Goodman,* and *Mr. Sol Goodman,* for appellees.

*Messrs. Clausen, Hirsh, Miller & Gorman, Mr. John P. Gorman, Mr. Jacob T. Pincus, Messrs. Lindhorst & Dreidame, Mr. Robert F. Dreidame* and *Mr. James L. O'Connell,* for appellant.

HESS, J. This is an appeal from a judgment of the Court of Common Pleas, Hamilton County, Ohio, entered on a jury verdict for the plaintiffs.

The parties will be referred to herein as they appeared in the Court of Common Pleas.

Delbert E. Olmstead, trustee, generally herein referred to as Olmstead, as owner of real estate located at 2517 Burnet Avenue, Cincinnati, Ohio, and Teasdale Cleaners, Inc., generally referred to as Teasdale, as lessee of the real estate, filed an action against the defendant, Lumbermen's Mutual Insurance Company, referred to as defendant, to recover for alleged losses under an insurance policy issued by the defendant to the plaintiffs.

A motion for summary judgment for defendant was denied and the cause proceeded to trial. The jury returned a verdict in favor of the plaintiffs, awarding Olmstead $59,207.93, including interest, and found for the plaintiff, Teasdale, in the sum of $56,145.92, including interest, and costs.

Subsequently, defendant moved for (a) judgment notwithstanding the verdict, (b) for a new trial as to Olm-

stead, and (c) for a new trial on behalf of Teasdale. The motions as to Olmstead were overruled; motion for judgment notwithstanding as to Teasdale was overruled; motion for new trial as to Teasdale was denied upon the condition that Teasdale accept a remittitur and consent to a judgment in its favor in the sum of $20,000, together with interest. Teasdale did not accept the suggested remittitur. Judgments were entered in keeping with the verdicts.

Defendant appealed from the judgment in favor of Olmstead, and Teasdale filed "its notice of cross-appeal" from the judgment which granted a new trial because Teasdale refused to accept the remittitur specified by the trial court.

Both the appeal and cross-appeal are before this court on questions of law.

The plaintiffs' evidence discloses that Olmstead, as trustee, was the owner of a parcel of real estate at 2517 Burnet Avenue, Cincinnati, Ohio, upon which was situated a complex of buildings. The land and buildings were leased to Teasdale, a dry cleaning business.

On or about July 29, 1964, defendant issued to Olmstead and Teasdale a policy of insurance providing coverage against specified perils or losses directly resulting in physical loss and damage to the buildings and, also, against the hazard of loss of the use of the property caused by perils therein specifically enumerated. Olmstead and Teasdale were insured against loss by "collapse": "Loss by collapse shall mean only the collapse of the building(s) or any part thereof."

"Exclusions" provisions of the policy provide under the subheading "Earthquake Exclusions" that "this company shall not be liable for loss caused by, contributed to, or aggravated by earthquake, landslide (except as provided is this form), or any other earth movement or settling, however caused, unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss."

In July, 1964, the owner of the real estate adjacent to 2517 Burnet Avenue, commenced excavation for the pur-

pose of erecting a building thereon. The property was excavated close to the Olmstead building foundation to a depth of approximately twenty feet. During the excavation, there were repeated movements of earth under plaintiff Olmstead's building(s), the first of which occurred in August, 1964; the second in December, 1964, and the third in June, 1965.

As a result of such movement of earth under the building(s) owned by Olmstead, cracks were observed from time to time in the side wall(s) of his building(s). The cracks were due to the movement of earth support beneath the Olmstead building(s). No part of the walls of Olmstead's building fell down or disintegrated. All the walls remained standing. One wall manifested a bowing and there was a measurable sagging of the roof of one of the Olmstead buildings. Also, as a result of the earth movement under Olmstead's building(s), cracks appeared in the cement slab first floor. There was no physical damage to Teasdale's machinery and equipment, although there is evidence Teasdale experienced some difficulty in removing its machinery when it moved to another location several months later.

During movements of earth between August, 1964 and June, 1965, Frank Messer & Sons, referred to as Messer, a general contractor conducting the excavation work adjacent to the Olmstead property, had erected shoring to prevent any slipping or movement of earth beneath the Olmstead building, but the damage to the building did occur.

After cracks were observed in the Olmstead building, Messer made proposals relative to preventing further movement of soil and any further damage to the Olmstead property.

When Messer attempted to do the work it deemed necessary to prevent further movement of earth beneath the Olmstead building, it was prevented from so doing by Olmstead.

There is conflict in the evidence on the question of whether the Olmstead building could be repaired. Witnesses for the plaintiffs did not say the damage to the Olmstead building could not have been repaired.

Teasdale occupied the premises without loss of business until December, 1964, at which time it moved its machinery, equipment and chattels from the Olmstead property. Thereafter the building was razed by Olmstead.

There appears to be no real question concerning the facts that the damage to the Olmstead building was caused by movement of earth under it occasioned by insufficient or inadequate shoring when the excavation was done by Messer.

The defendant presents two assignments of error:

"(I) The trial court erred in failing to grant defendant's motion for directed verdict against both plaintiffs and in failing to enter judgment for defendant notwithstanding the verdict," and

"(II) the trial court erred in failing to grant a new trial with respect to the plaintiff, Olmstead."

The errors presented by the plaintiff raise two questions:

(1) Did the Olmstead building "collapse" within the terms of the insurance policy issued by the defendant?

(2) Was there a landslide which produced any damage to the plaintiffs for which defendant would be liable under its insurance contract?

There is no definition of the word "collapse" in the insurance contract. Special charge number eighteen presented by defendant before final argument of counsel contained a definition of "collapse." This charge was refused. There is no explanation of the meaning of "collapse" in the general charge of the court.

The meaning of the word "collapse" has received the attention of the courts in many jurisdictions. In Alabama, Colorado, Illinois, Kentucky, Missouri, New York, Pennsylvania and Vermont, "collapse" has been construed to mean that the structure fell down, disintegrated, or an actual falling in to the point where the structure was wholly unuseable or a heap of rubbish. In Iowa, Kansas, Louisiana, Nebraska, New Mexico and Wisconsin, the courts appear to have adopted a more liberal view and in some cases determined that if the "integrity" of the building is destroyed, or the damage is such as to "destroy the efficiency

of the building as a habitation," or a structure is rendered "unsuitable as a dwelling," then the building or structure can be said to have collapsed.

Although Ohio has not passed on the precise collapse issue it has provided a guideline in the case of *Garlick* v. *McFarland,* 159 Ohio St. 539, in relation to the meaning of words in a contract. In that case the rule is well established that words used in a contract of insurance are to be given their natural and usual meaning unless otherwise defined in the contract. The Supreme Court of Ohio has followed this view in *Carroll Weir Funeral Home* v. *Miller,* 2 Ohio St. 2d 189. In *Hirschfelt* v. *Kentucky Central Life & Accident Ins. Co.,* 90 Ohio App. 144, it is held the terms of an insurance policy should be taken in their "plain, ordinary and popular sense."

Webster's dictionary defines "collapse" as: "to fall or shrink together as the sides of a hollow vessel; to fall into a flattened mass, distorted or disorganized state." In 14 C. J. S. at page 1316, the word "collapse" is defined as follows: "to break down or fail abruptly and utterly, to cave in; to close by falling or shrinking together, to fall together, or into an irregular mass or flattened form, through loss of firm connection or rigidity and support of the parts or loss of the contents, as a building through the falling in of its sides, or an inflated bladder from escape of the air contained in it, or to fall together suddenly, as the two sides of a hollow vessel; to go to pieces; and to shrink up; as, a tube in a steam boiler collapses. The term has been said to have almost an opposite meaning from 'explosion.' "

In *Garlick* v. *McFarland, supra,* the rule is well established that words used in a contract of insurance are to be given their "natural and usual meaning unless otherwise defined in the contract." In *Hirschfelt* v. *Kentucky Central Life and Accident Insurance Co., supra,* it is held that the terms of an insurance policy should be construed in their "plain, ordinary and popular sense."

In *Brescoll* v. *Nationwide Mutual Ins. Co.,* 116 Ohio App. 537, 189 N. E. 2d 173, the rule is said to be the "natural and usual meaning" unless otherwise defined in the con-

tract of insurance. And, in the case of *Schoch* v. *Bloom*, 5 Ohio Misc. 155, 212 N. E. 2d 428 (Court of Common Pleas, Hamilton County, Ohio), the court determined that "where a writing is worded in clear and precise terms, and where its meaning is evident and tends to no absurd conclusion, they are to be taken and understood in their plain, ordinary and popular sense. Another fundamental rule of law is that courts may not extend their jurisdiction and powers to construe plain and unambiguous language to relieve parties competent to contract from hardship * * *."

Evidently, the trial court in the instant case considered the word "collapse" to be so commonly understood by the jurors that it refused to give a special charge or include in the general charge any definition or meaning of that word.

Certainly, the large number of cases in which courts have been called upon to struggle with the meaning of the word "collapse" is sufficient to determine that the failure to define it to a jury, when requested so to do, is error.

Giving the plaintiffs' evidence its most favorable consideration, it fails to prove that the Olmstead building did fall, shrink, flatten in a distorted mass, break down, cave in; disintegrate, break into pieces, lose its character or integrity as a building, or come within definitions of collapse provided by lexicographers and well reasoned court decisions. Webster's Dictionary; *Higgins* v. *Connecticut Fire Ins. Co.*, 163 Colo. 292, 430 P. 2d 479; *Skelly* v. *Fidelity & Casualty Co.*, 313 Pa. 202, 169 A. 78; *Life & Casualty Ins. Co. of Tennesseee* v. *Bottoms*, 225 Ala. 382, 143 So. 574; *Niagara Fire Ins. Co.* v. *Curtsinger* (Ky.), 361 S. W. 2d 762; *Gage* v. *Union Mutual Fire Ins. Co.*, 122 Vt. 246, 169 A. 2d 29; *Graffeo* v. *United States Fidelity & Guaranty Co.*, 246 N. Y. Supp. 2d 258; *Nugent* v. *General Ins. Co. of America*, 253 F. 2d 800; *Rubenstein* v. *Fireman's Fund Ins. Co.*, 339 Ill. App., 404, 90 N. E. 2d 289; *Employers Mutual Cas. Co.* v. *Nelson* (Tex.), 361 S. W. 2d 704; *Eaglestein* v. *Pacific National Fire Ins. Co.* (Mo App.), 377 S. W. 2d 540.

Although not directly in point, attention is directed to the case of *Royal Sausage & Meat Co.* v. *Aetna Casual-*

*ty & Surety Co.,* 99 Ohio App. 77, wherein *Louisville Underwriters* v. *Durland,* 123 Ind. 544, 24 N. E. 221, 7 L. R. A. 399, is cited with approval in distinguishing the difference between explosion and collapse, and indicates collapse to be a falling in of a structure.

In relation to the plaintiffs' contention they are entitled to recover under the "Earthquake Exclusion" provision of the policy of insurance, there is no evidence of an earthquake.

The plain, ordinary and unambiguous language of the insurance contract that the defendant "shall not be liable for loss caused by, contributed to or aggravated by earthquake, landslide (except as provided in this form), or any other earth movement or settling, however caused, unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss" would appear to eliminate any liability for earth movement unless fire or explosion ensued. There was no fire or explosion. If this entire provision is predicated upon earthquake there could not be any recovery by the plaintiffs for earth movement under the building.

The "Earthquake Exclusion" provision of the insurance policy is so written that it not only excludes liability on behalf of the company for earthquake damage, but also excludes "earth movement or settling, however caused."

Having determined the plaintiffs are not entitled to recover on the theory the Olmstead building collapsed, and that damage by earth movement is specifically excluded as a basis for damages, it follows that the judgment of the Court of Common Pleas must be reversed and final judgment rendered for the defendant.

*Judgment reversed.*

SHANNON, P. J. and HILDEBRANT, J., concur.