CUNDALL et al., Appellant,

v.

U.S. BANK, N.A. et al., Appellees.

[Cite as *Cundall v. U.S. Bank,* 174 Ohio App.3d 421, 2007-Ohio-7067.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–070081 and C–070082.

Decided Dec. 28, 2007.

422

426

Drew & Ward and Richard G. Ward, for appellant Michael K. Cundall.

William H. Blessing, for appellants Michael K. Cundall Jr., Courtney Fletcher Cundall, and Hillary Cundall.

Frost Brown Todd, L.L.C., and Susan Grogan Faller, for appellee U.S. Bank.

Beckman, Weil, Shepardson, L.L.C., Peter L. Cassady, and Brian G. Dershaw, for appellees Deborah Koons Garcia, John F. Koons IV, James B. Koons, Caroline M. Koons, Kathleen M. Koons, Maura L. Koons, Jeremy B. Koons, and Morgan N. Koons.

Ulmer & Berne, L.L.P., Donald J. Mooney Jr., and Pamela K. Ginsburg, for appellees Christina Koons, Nicholas Koons Baker, and Carson Nye Koons Baker.

Taft, Stettinius & Hollister, L.L.P., and Helmer, Martins, Rice & Popham, James B. Helmer Jr., Julie W. Popham, Robert M. Rice, and Erin M. Campbell, for appellees Richard W. Caudill, Executor, Keven E. Shell, Ancillary Administrator, Richard W. Caudill, Successor Trustee, Keven E. Shell, Successor Trustee, William P. Martin II, Successor Trustee, D. Scott Elliott, Successor Trustee, G. Jack Donson, Jr., Successor Trustee, and Michael Caudill, Successor Trustee.

---

Mark P. Painter, Judge.

{¶ 1} Michael Cundall sued a group of defendants for tortious breach of fiduciary duty, a constructive trust, a declaratory judgment, an accounting, and related relief. The suit alleged egregious breaches of trust. The trial court dismissed the case. Michael and his children, the cross-claimants, now appeal.

We reverse the trial court's judgment in all respects except for the dismissal of U.S. Bank.

## I. Two Trusts

{¶ 2} John F. Koons Sr. ("John"—we use first names because many of the parties have the same last names) was president and chief executive officer of Central Investment Corporation ("CIC"), which had originally owned the Burger Brewing Company in Cincinnati, but had diversified into soft-drink bottling, which prospered long after the brewery had closed. John F. Koons III ("Bud") succeeded his father as president and CEO of CIC. (Another corporation, Koons–Cundall–Mitchell, was a holding company for CIC stock. To make the case simpler to understand, we refer to both as CIC.)

{¶ 3} In 1976, John and his wife, Ethel, created a trust ("the Grandparents Trust"). They placed 6,309 shares of CIC stock in the trust. Bud served as trustee of the Grandparents Trust from its creation. The trust document instructed the trustee to equally divide the initial assets into Fund A ("the Koons Fund") for the benefit of Bud's children, and Fund B ("the Cundall Fund") for the benefit of John and Ethel's daughter Betty Lou Cundall's children. And it directed the trustee to divide equally any additional amounts contributed by any person, unless the amounts were specifically earmarked for one of the funds. The two funds were to be separate for accounting and distribution purposes. The trust document specifically prevented Bud from distributing the income or principal of the trust either to Bud directly or for his benefit. But it gave Bud the power to sell any assets of the trust for cash "without being subject to the laws of the state or nation," whatever that may mean.

{¶ 4} Betty Lou created a separate trust in 1977. The Betty Lou Trust contained 10,077 shares of CIC stock. U.S. Bank (formerly First National Bank of Cincinnati, Firstar, and Star) was the trustee of the Betty Lou Trust from its inception until 1996. U.S. Bank also served as the commercial banker for Bud's company, CIC.

{¶ 5} In 1983, Bud offered to purchase the Cundall family's shares of CIC stock, including the shares that were in the Cundall Fund and the Betty Lou Trust. Bud's first offer, for $155 per share, was refused. Shortly thereafter, CIC purchased company stock from another shareholder, Lloyd Miller, at $328 per share.

{¶ 6} Michael alleged that Bud had approached him and his siblings—the beneficiaries of the Cundall Fund—and told them that he would stop distributing dividends and that the CIC shares would be worth nothing if they did not sell. (As sole trustee for the Grandparents Trust, Bud had the unfettered power to distribute income or principal as he saw fit.) In 1984, the Cundall family sold

back to the company all their shares of CIC, from both the Cundall Fund and the Betty Lou Trust, for $210 per share, $118 less per share than what Miller had received for his shares. The Cundalls signed documents that purported to release the trustees—Bud as trustee of the Grandparents Trust and U.S. Bank as the trustee for the Betty Lou Trust—from any liability for the sale in exchange for their "consent" to the sale. That is, Bud, as fiduciary, procured a release from the beneficiaries for selling the trust stock to his own corporation.

{¶ 7} Michael's "bullying" allegation was just that and, as with all other allegations, remains to be proved. But if it is true, it is a patently egregious violation of a fiduciary duty. And even if it is not true, there is a strong presumption that the dealings were unfair.

{¶ 8} In 1992, Bud Koons signed a "Division of Trust" document. It divided the Grandparents Trust into two new trusts, A ("the Koons Trust") and B ("the Cundall Trust"). At that time, the CIC stock that remained in the Koons Trust was worth $1,011 per share. But the allegedly "equal" trusts were equal no longer: the Koons Trust was valued at $2,656,908, and the Cundall Trust was valued at $536,431. Bud resigned as trustee of the Koons Trust, but continued serving as trustee for the Cundall Trust until his death in 2005. Odd.

{¶ 9} In 1996, U.S. Bank was removed as trustee of the Betty Lou Trust.

{¶ 10} In February 2005, Pepsiamericas Inc. bought CIC for $3,009.74 per share, or approximately $340 million. In March 2005, shortly after Pepsi bought CIC, Bud died.

## II. Who Will be Trustee?

{¶ 11} The original trust instrument that had created the Grandparents Trust named three successor trustees if Bud ceased to be the trustee. Shortly after Bud died, one of three named successor trustees began examining the trust. He wrote a letter to another named successor trustee questioning the huge disparity in values, because the assets were supposed to be evenly split, and speculated that any trustee or lawyer who knew or should have known about the disparity could be exposed to personal liability.

{¶ 12} All three of the named successor trustees declined to serve as fiduciaries. The trust specified that in the event that the three were unable or unwilling to serve as trustee, U.S. Bank would be appointed as the trustee. U.S. Bank eventually also declined to serve as trustee.

{¶ 13} Michael apparently became aware of the disparity in the funds and petitioned the trial court to become Bud's successor as the trustee of the Grandparents Trust. He took over as the trustee in November 2005.

### III. Case Filed and Dismissed

{¶ 14} In March 2006, Michael filed suit against Bud's estate, the successor trustees, the Koons children and grandchildren, the Cundall children and grandchildren, and U.S. Bank. According to Michael, he named everyone so that any of the beneficiaries could come forward and make whatever claims they wanted. Some of the Cundalls filed cross-claims against Bud's estate, the trustees, and the Koons beneficiaries.

{¶ 15} Michael alleged that Bud had breached his fiduciary duty to the beneficiaries of the Cundall Fund by mishandling the trust funds. Further, he alleged that Bud and U.S. Bank had breached their fiduciary duties and defrauded the Cundalls by misrepresenting the true value of the CIC stock and by self-dealing.

{¶ 16} In January 2007, the trial court dismissed the case on a Civ.R. 12(B) motion, holding that the Cundalls were required to tender the consideration they had received from the 1984 sale of their CIC stock before bringing suit. The trial court dismissed with prejudice U.S. Bank and Bud's estate on statute-of-limitations grounds. It dismissed without prejudice the out-of-state Koons beneficiaries for lack of personal jurisdiction. The trial court also denied as moot Michael's motion to file a second amended complaint and all other pending motions. This appeal followed.

### IV. Assignments of Error

{¶ 17} Michael asserts seven assignments of error. He contends that the trial court erred by (1) granting the motions to dismiss on the basis of the "tender rule"; (2) disregarding the facts alleged in the complaint and considering documents outside of the complaint on a Civ.R. 12(B)(6) motion; (3) granting U.S. Bank's motion to dismiss on statute-of-limitations grounds; (4) dismissing the claims against Bud's estate; (5) denying Michael's motion to file a second amended complaint; (6) granting the out-of-state defendants' motions to dismiss for lack of personal jurisdiction; and (7) denying Michael's request for an accounting.

{¶ 18} The Cundall children also assert assignments of error that overlap Michael's first, fourth, and sixth assignments of error, so we consider these together.

### V. Tender Not Necessary

{¶ 19} In 1984, CIC bought back all of its shares in both the Cundall Fund of the Grandparents Trust and the Betty Lou Trust. The Cundalls signed releases purporting to discharge Bud—the trustee of the Grandparents Trust—and U.S.

Bank—the trustee of the Betty Lou Trust—from all liability stemming from the transaction.

{¶ 20} The trial court, relying on *Haller v. Borror Corp.*,[1] dismissed the Cundalls' case primarily because the Cundalls had not tendered back the money that they had received from the stock transaction. But *Haller* is not controlling here.

{¶ 21} *Haller* was a personal-injury tort case. The Ohio Supreme Court laid out the rules for tender in tort cases. If a release is procured by fraud in the factum—when a misrepresentation prevents a meeting of the minds about the nature of the document—the release is void, and thus a tender is not required. But if a release is procured by fraud in the inducement—when the party understands the document, but is induced to sign by a fraudulent misrepresentation within the document—the release is voidable, and the party is required to tender any consideration given in return for the release before filing suit. The goal in the latter situation is to restore the parties to the status quo ante; that is, where they were before they settled the case. In an arm's length transaction, it would be manifestly unfair to have a party keep the money in the meantime and argue that he should get more.

{¶ 22} The differentiation of types of fraud in *Haller* does not apply to this case. *Haller* was a personal-injury case involving an arm's length transaction, and there was no fiduciary relationship between the parties.

{¶ 23} But "[o]rdinary rules of fraud or undue influence do not apply where there is a fiduciary relationship."[2]

{¶ 24} We have found no Ohio cases—or any cases from *anywhere*—directly on point on the tender issue, probably because no one has been clever or audacious enough to propose such a theory.

{¶ 25} None of the cases cited in support of the tender theory involve a fiduciary relationship in which the fiduciary benefited from a transaction with the party who was owed a fiduciary duty. In *Lewis v. Mathes*,[3] for example, the plaintiff claimed that the defendants had breached a fiduciary duty. But nothing in the case suggested that a fiduciary relationship existed, because the plaintiffs and the defendants were equal shareholders in a corporation. We have found no case in any jurisdiction that requires a tender when a fiduciary has allegedly breached its duty by self-dealing. And we will surely not create such a requirement here.

---

1.  (1990), 50 Ohio St.3d 10, 552 N.E.2d 207.

2.  *Muth v. Maxton* (1954), 53 O.O. 263, 119 N.E.2d 162.

3.  161 Ohio App.3d 1, 2005-Ohio-1975, 829 N.E.2d 318.

{¶ 26} In this case, both U.S. Bank and Bud were trustees, and thus they were in fiduciary relationships with the Cundalls.[4] Therefore, both U.S. Bank and Bud had undertaken a duty of loyalty. The duty of loyalty arises not from a provision in the trust, but on account of the trustee-beneficiary relationship.[5] The duty of loyalty requires a trustee who has a personal stake in a transaction to adhere to a particularly high standard of behavior.[6] The duty of loyalty is " 'the essence of the fiduciary relationship.' "[7] Fiduciaries have the burden of proving the "perfect fairness and honesty" of a transaction that was entered into during the fiduciary relationship.[8] Whether the fiduciary has demonstrated the fairness of a transaction is a question of fact for a jury.[9]

{¶ 27} Fiduciaries have a duty to "administer the trust solely in the interests of the beneficiaries."[10] Perhaps Justice Cardozo stated it best: "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."[11]

{¶ 28} This "punctilio of an honor" will be enforced by this court.

{¶ 29} Some defendants contend that because the Grandparents Trust instrument gave Bud unfettered discretion to sell assets for cash without "being subject to the laws of Ohio," the transaction could not have been fraudulent. Nonsense. What law was the trustee under—none? Bud clearly was under the jurisdiction of Ohio and was therefore subject to Ohio's laws; and a trustee may not "take advantage of liberal provisions of a trust instrument to relieve him[self]

---

4. *O'Neill v. O'Neill,* 169 Ohio App.3d 852, 2006-Ohio-6426, 865 N.E.2d 917, at ¶ 8.

5. 3 Scott, Trusts (5th Ed.2007) 1077, Section 17.2.

6. Id.

7. Boxx, Of Punctilios and Paybacks: The Duty of Loyalty Under the Uniform Trust Code (2002), 67 Mo.L.Rev. 279, 280, quoting Shepherd, The Law of Fiduciaries (1981), 48.

8. *Atwater v. Jones* (1902), 24 Ohio C.C. (N.S.) 328, 34 Ohio C.D. 605; *Kime v. Addlesperger* (1903), 2 Ohio C.C. (N.S.) 270, 277, 14 Ohio C.D. 397; *Peterson v. Mitchener* (1947), 79 Ohio App. 125, 133, 34 O.O. 490, 71 N.E.2d 510.

9. (1949), 85 Ohio App. 497, 40 O.O. 384, 89 N.E.2d 159.

10. R.C. 5808.02. See, also, Restatement of the Law 2d, Trusts (1992), Section 170; 853 Rounds, Tax Management: Estates, Gifts, and Trusts: Fiduciary Liability of Trustees and Personal Representatives (2003), A–25.

11. *Meinhard v. Salmon* (1928), 249 N.Y. 458, 464, 164 N.E. 545.

from the legal responsibility of a fiduciary under the law."[12] Statutory and common law govern the rights and responsibilities of fiduciaries.[13] And even though the new Ohio Trust Code mandates that a trustee is not liable for breach of trust if the beneficiary has consented to the conduct,[14] that provision does not apply if the consent is procured by improper conduct of the trustee, a fact that Michael alleged. Furthermore, the transaction in question took place in 1984, long before the 2007 Ohio Trust Code was enacted.

{¶ 30} Even if we were to disregard the statutory laws of Ohio, the common law would still apply, and a fiduciary duty still would exist. Thus, Bud and U.S. Bank had the highest duty to act solely in the Cundalls' best interests concerning both the signing of the releases and the sales of CIC stock.[15] Perhaps they did. But it is their burden to so prove.

{¶ 31} When a fiduciary—or an entity connected with the fiduciary—ends up with property originally in the trust, bells ring and sirens wail.

{¶ 32} Self-dealing—when trustees use the trust property for their own personal benefit—is considered "particularly egregious behavior."[16] And any direct dealings between a trustee and a beneficiary are "viewed with suspicion."[17]

{¶ 33} Many jurisdictions have held that transactions between a fiduciary and a beneficiary entered into during the fiduciary relationship are presumptively fraudulent.[18] Other jurisdictions have held that releases will not be upheld if one party is at a disadvantage because it has depended on the fiduciary to protect its interests,[19] or if the release protects the fiduciary against fraud, violates public policy, or relieves the fiduciary of a duty imposed by law.[20]

---

**12.** *In re Estate of Binder* (1940), 137 Ohio St. 26, 43–44, 17 O.O. 364, 27 N.E.2d 939.

**13.** *Biddulph v. Delorenzo*, 8th Dist. No. 83808, 2004-Ohio-4502, 2004 WL 1902725, at ¶ 27.

**14.** R.C. 5810.09.

**15.** See, also, Restatement of the Law 2d, Trusts (1992), Sections 170 and 206.

**16.** 857 Horwood and Wolven, Tax Management: Estates, Gifts and Trusts: Managing Litigation Risks of Fiduciaries (2007), A–18.

**17.** Bogert, Trusts & Trustees, (2d Ed.1995) 542, Section 943.

**18.** See, e.g., *Grubb v. Estate of Wade* (Ind.App.2002), 768 N.E.2d 957, 962; *Brown v. Commercial Natl. Bank* (1968), 94 Ill.App.2d 273, 279, 237 N.E.2d 567; *Birnbaum v. Birnbaum* (N.Y.App.1986), 117 A.D.2d 409, 416–417, 503 N.Y.S.2d 451, quoting *In re Rees' Estate* (1947), 72 N.Y.S.2d 598, 599.

**19.** *Gugel v. Hiscox* (1910), 122 N.Y.S. 557, 138 A.D. 61.

**20.** *United States v. United States Cartridge Co.* (C.A.8, 1952), 198 F.2d 456, 464. See, also, *Arst v. Stifel, Nicolaus & Co.* (D.Kan.1997), 954 F.Supp. 1483, 1493, quoting *Belger Cartage Serv. v.*

## VI. Releases Are Highly Suspect

{¶ 34} After examining Ohio statutes, Ohio case law, and other jurisdictions' case law, we believe that documents that purport to release a fiduciary from liability concerning a transaction that occurred during the fiduciary relationship, where the fiduciary has gained some benefit, are highly suspect. And a beneficiary may challenge this type of transaction without tendering back the consideration given for the release; the so-called "tender rule" has absolutely no application in the fiduciary setting.

{¶ 35} Bud and U.S. Bank gained from the releases because they purported to absolve them from any potential liability, even if the stock sale itself was a breach of their fiduciary duties.

{¶ 36} Bud, and perhaps U.S. Bank, also gained from the stock sale. Bud was CEO of the corporation that bought the shares. Bud's side of the family benefited from the unequal division of the trust. U.S. Bank was the commercial banker for the corporation.

{¶ 37} In a slightly different context, a New York court put it thus: " '[Any] acquisition of the shares of the beneficiaries by one of the fiduciaries must be dealt with as presumptively void unless affirmative proof is made by the fiduciaries that their dealings with each beneficiary was in every instance aboveboard and fully informative. The fiduciaries in such circumstances have the obligation to show affirmatively not only that they acted in good faith but that they volunteered to the beneficiaries every bit of information which personal inquiry by the beneficiaries would have disclosed.' " [21]

{¶ 38} If the releases and stock sales are to be proved valid in this case, the burden is on the fiduciaries to show that they acted with the utmost good faith and exercised the most scrupulous honesty toward the beneficiaries, placed the beneficiaries' interests before their own, did not use the advantage of their trustee positions to gain any benefit at the beneficiaries' expense, and did not place themselves in a position in which their interests might have conflicted with their fiduciary obligations.[22]

---

*Holland Constr.* (1978), 224 Kan. 320, 330, 582 P.2d 1111; *Mid–America Sprayers, Inc. v. United States Fire Ins. Co.* (1983), 8 Kan.App.2d 451, 455, 660 P.2d 1380; *Ganley Bros. v. Butler Bros. Bldg. Co.* (1927), 170 Minn. 373, 212 N.W. 602, 603.

**21.** *Birnbaum v. Birnbaum* (1986), 503 N.Y.S.2d 451, 117 A.D.2d 409, quoting *In re Rees' Estate* (1947), 72 N.Y.S.2d 598, 599.

**22.** See, e.g., *Atwater v. Jones,* supra; *Bacon v. Donnet,* 9th Dist. No. 21201, 2003-Ohio-1301, 2003 WL 1240142, at ¶ 29–30; *Schoch v. Bloom* (1965) 5 Ohio Misc. 155, 158, 33 O.O.2d 330, 212 N.E.2d 428; *In re Guardianship of Marshall* (May 26, 1998), 12th Dist. Nos. CA96–11–239 and CA96–11–244, 1998 WL 265010; 3 Scott, Trusts (5 Ed.2007) 1078, Section 17.2.

■ {¶ 39} We are aware of the argument that because Bud did not himself purchase the shares—they were purchased by the corporation that he was CEO and majority shareholder of—it was not technically self-dealing. This court has previously, and correctly, rejected that argument.[23]

{¶ 40} Therefore, the Cundalls were not required to tender back the consideration. The trial court erred by dismissing Michael and his children's claims on this ground. The Cundalls' first assignment of error is sustained.

### VII. Civ.R. 12(B): Evidentiary Materials

{¶ 41} An appeals court reviews a trial court's entry of a Civ.R. 12(B) dismissal de novo.[24] When determining the validity of a dismissal under the rule, we accept as true all factual allegations in the complaint.[25]

{¶ 42} Civ.R. 12 states, "When a motion to dismiss for failure to state a claim upon which relief can be granted presents matters outside the pleading and such matters are not excluded by the court, the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56." Michael argues that the trial court erred by considering documents outside the pleadings and by not considering the entire trust document. Michael had filed a Civ.R. 12(F) motion to strike the documents attached to the defendants' motions to dismiss.

■ {¶ 43} There is no evidence that the trial court failed to consider the entire trust document. But the trial court might have improperly considered evidence outside the pleadings.

{¶ 44} The trial court considered the documents that released U.S. Bank and Bud from liability and the letters concerning the stock transaction. Both were attached to Bud's personal representatives' motion to dismiss.

{¶ 45} The Ohio Supreme Court has determined that a court may consider documents outside the complaint to ascertain whether it has subject-matter jurisdiction under Civ.R. 12(B)(1).[26] This court has held that a trial court may consider documents that are referred to or incorporated in the complaint.[27] In

---

23. *In re Trust U/W of Woltering* (1999), 1st Dist. No. C–970913, 1999 WL 163759.

24. *Perrysburg Twp. v. Rossford,* 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, at ¶ 5.

25. Id.

26. *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 2 O.O.3d 393, 358 N.E.2d 526, paragraph one of the syllabus.

27. *Coors v. Fifth Third Bank,* 1st Dist. No. C–050927, 2006-Ohio-4505, 2006 WL 2520322, at ¶ 11.

this case, the complaint specifically referred to the releases. Therefore, the releases were properly considered by the trial court.

{¶ 46} The complaint did not refer to the letters that detailed the sale terms. The trial court did not state for what purpose it had considered the letters. If the court considered the letters for the purpose of determining whether it had jurisdiction over the case, it did so properly. The court could consider only materials that established the relevant dates for statute-of-limitations purposes.

{¶ 47} But the court was not permitted to consider the letters for Civ.R. 12(B)(6) purposes. The complaint discussed the stock sale, but did not incorporate or specifically refer to the letters.

{¶ 48} We do not know for what purpose the trial court considered these letters because the trial court's entry focused predominantly on the tender issue as its reason for granting the Civ.R. 12(B) motions. But our decision makes the issue moot.

### VIII.   U.S. Bank—Motion to Dismiss

{¶ 49} This court reviews the trial court's Civ.R. 12 decisions de novo, so we consider whether each set of defendants should have been dismissed from the case. The trial court dismissed U.S. Bank from the case because the statute of limitations had run. We agree with the trial court's determination. U.S. Bank was out of the picture in 1996 when it ceased to be the trustee for the Betty Lou Trust, and the statute of limitations began to run at that time.

{¶ 50} In the amended complaint, Michael alleged that U.S. Bank had served as the trustee of the Betty Lou Trust and that it had breached its fiduciary duty. In 1984, when CIC bought back its stock from the Betty Lou Trust, U.S. Bank was both the trustee of the Betty Lou Trust and the commercial banker for CIC. Michael alleged that U.S. Bank had breached its fiduciary duties to the Cundalls by participating in and enabling the stock sale, which was not in the best interests of the beneficiaries. He alleged that U.S. Bank had engaged in self-dealing by approving a stock sale that would have benefited one of its powerful customers. Further, Michael alleged that U.S. Bank knew and misrepresented the true value of the stock and that Michael had not discovered the fraud until after Bud's death in 2005.

{¶ 51} U.S. Bank argues that the statute of limitations began to run in 1984, when the transaction had occurred. Alternatively, it argues that its last involvement in the trust was in 1996, well outside the four-year limitations period. Finally, it argues that the Cundalls could not have recently discovered fraud, because they claimed that they had been bullied by Bud in 1984 to sell the stock

and because CIC had purchased back its stock back from another person for a higher price several months before the Cundalls sold their stock.

{¶ 52} The statute of limitations for breach of a fiduciary duty and fraud is four years.[28] For a trustee, the statute of limitations will not begin running until the fiduciary relationship has ended.[29] The statute of limitations does not begin to run in actions for fraud until the fraud is discovered or, through reasonable diligence, ought to have been discovered.[30]

{¶ 53} The "discovery rule"—the tolling of the statute of limitations until fraud is discovered—is not available to those who should have discovered fraud, but failed to discover it due to neglect or willful ignorance.[31]

{¶ 54} We believe that if the Cundalls had exercised reasonable diligence, they would have discovered any alleged fraud that U.S. Bank had perpetrated on them. In 1984, they knew that CIC had purchased Miller's shares at a much higher price. They also knew that U.S. Bank was CIC's commercial banker.

{¶ 55} We do not know why the Cundalls removed U.S. Bank as trustee from the Betty Lou Trust in 1996. But once that relationship ended, it was the Cundalls' responsibility to investigate whether any fraud had taken place during the trusteeship. Therefore, the statute of limitations began to run in 1996, when U.S. Bank ceased to serve as trustee of the Betty Lou Trust, and the limitations period ended in 2000.

### IX. Limitations and Presentment: Bud Koons

{¶ 56} The trial court dismissed Michael's claims and the Cundall defendants' cross-claims against the trustees for several of Bud's trusts and the personal representatives of Bud's estate because Michael had brought the suit outside the limitations period. Bud's representatives and the successor trustees argue that R.C. 2117.06 barred Michael and the Cundall defendants from bringing claims against Bud's estate.

{¶ 57} R.C. 2117.06 requires all claims against an estate to be presented within six months of the decedent's death.[32] But the statute applies only to claims that

---

28. R.C. 2305.09.

29. *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 247, 29 O.O. 399, 58 N.E.2d 675.

30. Id.; *Wooten v. Republic Savs. Bank,* 172 Ohio App.3d 722, 2007-Ohio-3804, 876 N.E.2d 1260, at ¶ 43; *Harris v. Liston* (1999), 86 Ohio St.3d 203, 207, 714 N.E.2d 377.

31. *Cline v. Cline,* 7th Dist. No. 05 CA 822, 2007-Ohio-1391, 2007 WL 901579, at ¶ 23.

32. R.C. 2117.06(B).

pursue recovery against the estate. R.C. 2117.06(G) states that the six-month statute of limitations does not apply unless "any recovery on a claim * * * [comes] from the assets of an estate."

{¶ 58} If Michael and the Cundall cross-claimants plan to pursue recovery strictly against Bud's trusts, life insurance policies, pension plans, or other monies that have passed or will pass outside Bud's estate, the time limits in R.C. 2117.06 do not apply. As noted above, R.C. 2117.06(G) makes exceptions for plaintiffs who wish to recover from sources other than the estate. And Michael was not required to allege in his complaint that he was relying solely on the trusts for recovery rather than on the assets of Bud's estate.[33]

{¶ 59} Many estate-planning devices ensure that property is passed outside of probate. Some of these are trusts, life insurance, pension plans, payable-on-death accounts, and advances made prior to death. Any property that passes outside of probate is not part of the estate.[34] If Michael and the Cundall cross-claimants prove their allegations against Bud, they may pursue recovery against any property that has passed or will pass outside of the estate.

{¶ 60} The personal representatives and successor trustees also argue that the Cundalls' claims were barred by the four-year statute of limitations. Not so. Michael filed well within the limitations period. He alleged that Bud, as the trustee of the Cundall Fund, had fallen below the standard of care and had breached his fiduciary duty. The statute of limitations for tortious breach of trust begins to run when the trustee ceases to serve as trustee.[35] Here, Bud served as the trustee of the Cundall Fund of the Grandparents Trust (and later the Cundall Trust) until he died in 2005, so the statute of limitations will expire in 2009.

{¶ 61} Thus R.C. 2117.06 did not prevent Michael and the Cundall cross-claimants from making a claim against Bud's estate, because they are pursuing recovery against property that will pass or has passed outside Bud's estate. And the four-year statute of limitations began running when Bud ceased to be the trustee of the Cundall Trust at his death in 2005.

---

33. *Wells v. Michael,* 10th Dist. No. 05AP–1353, 2006-Ohio-5871, 2006 WL 3199281, at ¶ 22.

34. Id.

35. *State ex rel. Lien v. House* (1944), 144 Ohio St. 238, 247, 29 O.O. 399, 58 N.E.2d 675. See, also, *Cassner v. Bank One Trust Co., N.A.,* 10th Dist. No. 03AP–1114, 2004-Ohio-3484, 2004 WL 1470806, at ¶ 29; *Hosterman v. First Natl. Bank & Trust Co.* (1946), 79 Ohio App. 37, 38, 34 O.O. 328, 68 N.E.2d 325.

## X.  Second Amended Complaint

{¶ 62} Michael filed the original complaint on March 3. He amended his complaint on March 24. On June 1, all the non-Cundall defendants filed motions to dismiss. Michael sought to file a second amended complaint on July 18.

{¶ 63} Civ.R. 15 provides that a party may amend its pleading once before a responsive pleading is filed. Otherwise, a party must obtain leave of the court to amend its complaint. The rule states that "[l]eave of court shall be freely given when justice so requires." The rule encourages liberal amendment. "[W]here it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." [36]

{¶ 64} The trial court erroneously dismissed the case due to lack of a tender and determined that Michael's motion to file a second amended complaint was futile. As discussed earlier, Michael was not required to tender back the consideration. We hold that the denial of leave for a second amendment was erroneous, and upon remand, the trial court should allow the amended complaint.

## XI.  Jurisdiction

{¶ 65} Michael and the Cundall cross-claimants contend that the trial court erred by dismissing the claims against out-of-state trust beneficiaries for lack of personal jurisdiction. The out-of-state Koons defendants argue that they had no minimum contacts with Ohio, that the Ohio long-arm statute did not reach them, that R.C. 5802.02 could not apply to them retroactively, and that Michael was attempting to use in rem jurisdiction as a "wormhole" to in personam jurisdiction. Because we are convinced that Ohio has personal jurisdiction over all defendants, it is not necessary to discuss in rem jurisdiction—or wormholes.

{¶ 66} The Cundalls had the burden of establishing the trial court's jurisdiction.[37] In response to a motion to dismiss, the Cundalls were required only to make a prima facie case of jurisdiction.[38] We review the trial court's grant of the jurisdictional motion de novo.[39]

{¶ 67} R.C. 5802.02 became effective January 1, 2007, four days before the trial court's entry of dismissal and ten months after the original complaint. The

---

36. *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 297 N.E.2d 113.

37. *Giachetti v. Holmes* (1984), 14 Ohio App.3d 306, 307, 14 OBR 371, 471 N.E.2d 165.

38. Id. at 307, 14 OBR 371, 471 N.E.2d 165.

39. *Information Leasing Corp. v. Baxter*, 1st Dist. No. C–020029, 2002-Ohio-3930, 2002 WL 1769453, ¶ 4.

statute gives Ohio jurisdiction over both trustees and beneficiaries of a trust located in Ohio for any dispute involving the trust.[40] According to R.C. 5811.03,[41] which describes the retroactive applicability of the newly enacted Ohio Trust Code, R.C. 5802.02 governs all judicial proceedings commenced prior to January 1, 2007 unless it would "substantially interfere with the effective conduct of the judicial proceedings or prejudice the rights of the parties." (The statute also says that the new code "do[es] not affect an act done before the effective date of those chapters." The Koons defendants make much of this provision, but it is not applicable to the issue of jurisdiction in this case.)

{¶ 68} Retroactive application of R.C. 5802.02 would not substantially interfere with the judicial proceedings. This case is in its infancy. The record reflects that little, if any, discovery has been conducted related to the issues on appeal.

{¶ 69} Nor would the retroactive application of R.C. 5802.02 prejudice the rights of the parties, because Ohio courts could have taken jurisdiction over the out-of-state Koons defendants even without the statute. They took the money, and with that came jurisdiction.

### XII.  Even Without the Statute, Jurisdiction is Proper

{¶ 70} The Cundalls had to demonstrate (1) that jurisdiction over the out-of-state trust beneficiaries was proper under Ohio's long-arm statute and applicable civil rule,[42] and (2) that the exercise of personal jurisdiction over the out-of-state trust beneficiaries would comport with federal due-process requirements.[43]

{¶ 71} Ohio's long-arm statute delineates those instances that render defendants amenable to the jurisdiction of Ohio.[44] Included among these provisions is a grant of jurisdiction when a person "[transacts] any business in this state."[45] Courts construe "transacting any business" broadly, and the phrase includes "hav[ing] dealings [with]."[46] Courts resolve questions about the applica-

---

40. R.C. 5802.02(B).

41. R.C. 5811.03(A)(3).

42. R.C. 2307.382 and Civ.R. 4.3.

43. *Goldstein v. Christiansen* (1994), 70 Ohio St.3d 232, 235, 638 N.E.2d 541.

44. R.C. 2307.382(A).

45. R.C. 2307.382(A)(1).

46. *Goldstein,* supra, at 236, 638 N.E.2d 541; *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477.

bility of R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) on "highly particularized fact situations, thus rendering any generalization unwarranted." [47]

{¶ 72} The Koons defendants are beneficiaries of trusts established and administered in Ohio. Clearly, the Koons defendants have dealings with Ohio— they have accepted money from the trusts. Accepting funds from a trust with its situs in Ohio firmly establishes jurisdiction under Ohio's long-arm statute.

{¶ 73} Jurisdiction over the Koons defendants also comports with federal due-process requirements. In *Mullane v. Cent. Hanover Bank & Trust Co.*, the United States Supreme Court addressed a state's right to preside over issues concerning trusts: "[T]he interest of each state in providing means to close trusts that exist by the grace of its laws and are administered under the supervision of its courts is so insistent and rooted in custom as to establish beyond doubt the right of its courts to determine the interests of all claimants, resident or nonresident, provided its procedure accords full opportunity to appear and be heard." [48] Although this case addressed only closing a trust, it clearly should apply to the administration of trusts in general.

{¶ 74} The trial court also had jurisdiction over the Koons defendants under *Internatl. Shoe Co. v. Washington* [49] and its progeny. Due process requires that a nonresident defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [50] The Supreme Court emphasized that the minimum-contacts analysis "cannot be simply mechanical or quantitative," and that whether due process is satisfied depends "upon the quality and nature of the activity." [51]

{¶ 75} *Internatl. Shoe* provided some general guideposts for jurisdictional questions. Jurisdiction is firmly established when the defendant's activities are "[not only] continuous and systematic, but also give rise to the liabilities sued on." [52] Continuous and systematic activities can also be "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings

---

47. *United States Sprint Communications Co. Partnership v. K's Foods* (1994), 68 Ohio St.3d 181, 185, 624 N.E.2d 1048.

48. (1950), 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865.

49. (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

50. Id. at 316, 66 S.Ct. 154, 90 L.Ed. 95.

51. Id. at 319, 66 S.Ct. 154, 90 L.Ed. 95.

52. Id. at 317, 66 S.Ct. 154, 90 L.Ed. 95.

entirely distinct from those activities." [53] Finally, even single acts committed within the forum can confer jurisdiction over a nonresident defendant "because of their nature and quality and the circumstances of their commission." [54]

{¶ 76} We hold that a regular beneficiary of an Ohio-administered trust meets the requisite minimum contacts in Ohio to support personal jurisdiction under federal constitutional standards. By accepting distributions from an Ohio trust, the Koons defendants carried on activities in Ohio and benefited from its laws. These activities were of a continuous and systematic nature such that maintenance of this suit in Ohio does not offend traditional notions of fair play and substantial justice.

{¶ 77} The Supreme Court added another layer to the due-process analysis in *Asahi Metal Indus. Co. v. Superior Court.* [55] Through a "reasonableness" inquiry, a court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. [56] It must also weigh the " 'interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several [s]tates in furthering fundamental substantive social policies.' " [57] In *Asahi*, these factors divested that court of jurisdiction, but in *Burger King v. Rudzewicz*, the Supreme Court explained that these factors may "serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." [58]

{¶ 78} Here, the *Asahi* factors strengthen the reasonableness of Ohio's jurisdiction over the Koons defendants. The interstate judicial system's interest in obtaining the most efficient resolution of the controversy weighs heavily against the Koonses' position. It is unclear whether Michael would be able to bring suit in any other forum. But even if that is possible, Ohio as the situs of the trust is the best-positioned state to fashion a potential remedy. The nonresident defendants are scattered throughout the country. The only reasonable site for this litigation is Ohio. We are aware of the burden that the

---

**53.** Id. at 318, 66 S.Ct. 154, 90 L.Ed. 95.

**54.** Id.

**55.** (1987), 480 U.S. 102, 108–109, 107 S.Ct. 1026, 94 L.Ed.2d 92.

**56.** Id. at 113, 107 S.Ct. 1026, 94 L.Ed.2d 92.

**57.** Id., quoting *World–Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490.

**58.** *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528.

nonresident defendants face by litigating in Ohio, but conclude that the *Asahi* factors operate against them in this case.

{¶ 79} Finally, it cannot be said that being an ongoing beneficiary of an Ohio-established-and-administered trust is a "random," "fortuitous," or "attenuated" contact, or the "unilateral activity of another party." [59]   As fittingly articulated in the official comment to Section 202 of the Uniform Trust Code, "[it seems] reasonable to require beneficiaries to go to the seat of the trust when litigation has been instituted there concerning a trust in which they claim beneficial interests, much as the rights of shareholders of a corporation can be determined at a corporate seat.   The settlor has indicated a principal place of administration by its selection of a trustee or otherwise, and it is reasonable to subject rights under the trust to the jurisdiction of the Court where the trust is properly administered."

{¶ 80} This is in keeping with the Supreme Court's explanation of the role of foreseeability in the personal-jurisdiction analysis.   "[The] foreseeability that is critical to due process analysis * * * is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." [60]

### XIII.   But the Statute Applies

{¶ 81} Effective only days before the trial court rendered its opinion, R.C. 5802.02 codified what was already the law of personal jurisdiction as it related to trustees and beneficiaries of an Ohio trust.   We agree with the Ohio legislature, as well as the other 19 other jurisdictions that have adopted the Uniform Trust Code,[61] that the provision for personal jurisdiction over those persons who accept a distribution from a state-administered trust is constitutional.[62]   And we note that we have found no court that has held this or any other provision of the UTC unconstitutional.[63]

---

**59.**   Id. at 474, 105 S.Ct. 2174, 85 L.Ed.2d 528.

**60.**   *Burger King Corp.*, 471 U.S., at 475, 105 S.Ct. 2174, 85 L.Ed.2d 528, quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559, 62 L.Ed.2d 490.

**61.**   Kansas, Nebraska, Wyoming, New Mexico, District of Columbia, Utah, Maine, Tennessee, New Hampshire, Missouri, Arkansas, Virginia, South Carolina, Oregon, North Carolina, Alabama, Florida, Pennsylvania, and North Dakota.

**62.**   Uniform Trust Code 202;   R.C. 5802.02.

**63.**   See, e.g., *In re Trust Created by Inman* (2005), 269 Neb. 376, 693 N.W.2d 514;   *In re Harris Testamentary Trust* (2003), 275 Kan. 946, 69 P.3d 1109.

{¶ 82} Because Ohio's exercise of jurisdiction over the out-of-state defendants comports with the state's long-arm statute as well as due-process requirements, the retroactive application of R.C. 5802.02 does not prejudice the parties. Even without the statute, jurisdiction is proper in Ohio. Furthermore, the retroactive application of R.C. 5802.02 would not substantially interfere with the judicial proceedings. Thus, R.C. 5802.02 applies, and Ohio jurisdiction over the out-of-state Koons defendants in this case is proper.

## XIV. Constructive Trust

{¶ 83} If the Cundalls are able to prove their allegations, they will be entitled to compensatory and perhaps punitive damages.

{¶ 84} The Koons defendants argue that the statute of limitations bars any claim for a constructive trust because the statute of limitations for a constructive trust begins to run on the date of the initial transfer. Not so. Statutes of limitation attach to causes of action.[64] That the remedy is a constructive trust is irrelevant because, as we have already stated, the Cundalls' cause of action arose when Bud ceased to be the trustee.

{¶ 85} A constructive trust is an equitable remedy that corrects unjust enrichment.[65] When a person owns legal title to property, but equity recognizes that the person should not retain all or some of the benefit of that property, a court may impose a constructive trust, which converts the owner into a trustee.[66] A constructive trust is usually imposed when property has been obtained wrongfully.

{¶ 86} If the Cundalls are able to prove that Bud wrongfully acquired the CIC stock, and that his descendants and trusts are legal owners of property that rightfully belongs to the Cundalls, a constructive trust would be appropriate. When property is wrongfully obtained by the wrongdoer, and the wrongdoer subsequently transfers the property to third parties, a court will impose a constructive trust on that property.[67] Upon remand, the Cundalls will bear the burden of proving that the court should impose a constructive trust.[68]

---

64. *Peterson v. Teodosio*, 34 Ohio St.2d at 172, 63 O.O.2d 262, 297 N.E.2d 113.

65. *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, at ¶ 19.

66. Id.

67. Id. at ¶ 26.

68. Id. at ¶ 20.

### XV.  Accounting

{¶ 87} Michael argues that the trial court erred by denying his request for an accounting of the trusts.

{¶ 88} By statute,[69] a trustee must provide reports to current beneficiaries. Because Michael is not a current beneficiary of any of the trusts administered by any of the defendants, the statute does not apply.

{¶ 89} But once the parties continue with discovery, Michael will have a right to any nonprivileged documents the parties have concerning the trusts.  Civ.R. 26 allows parties to obtain discovery on any matter relevant to the action, as long as the material is not privileged.

### XVI.  Reversed, Except as to U.S. Bank

{¶ 90} For the foregoing reasons, we affirm the trial court's dismissal of U.S. Bank because the limitations period had run.  We reverse all other aspects of the trial court's judgment and remand this case for further proceedings.

Judgment affirmed in part
and reversed in part,
and cause remanded.

HENDON and DINKELACKER, JJ., concur.