O'NEILL, Appellant,

v.

O'NEILL, Appellee.

[Cite as *O'Neill v. O'Neill,* 169 Ohio App.3d 852, 2006-Ohio-6426.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87656.

Decided Dec. 7, 2006.

Karl E. May, for appellant.

VanDeusen & Wagner L.L.C., and Roger W. VanDeusen, for appellee.

ANTHONY O. CALABRESE, JR., Judge.

{¶ 1} Plaintiff-appellant Patrick O'Neill appeals the lower court's grant of summary judgment to defendant Hugh O'Neill (trustee) and denial of his motion for partial summary judgment in his claim for breach of fiduciary duty regarding trust assets of which he was a beneficiary. After reviewing the facts of the case and the law, we affirm.

I

{¶ 2} Appellant is a principal beneficiary of the Patrick J. O'Neill Irrevocable Trust, established on January 28, 1970, by appellant's grandfather (settlor).

Patrick J. O'Neill, who is appellant's father, was the original beneficiary; per the terms of the trust, this position passed to appellant when his father died in 1988. The trustee, who has served in this capacity since the trust's inception, is appellant's paternal uncle. Additionally, the settlor appointed attorney John F. Conway as the original cotrustee; this position passed to Society National Bank of Cleveland, now known as Key Bank (cotrustee), when Conway died on March 9, 1999.

{¶ 3} The settlor's intention in creating the trust was to provide the beneficiaries with the trust assets as necessary, including scheduling three milestones for disbursement of the principal, i.e., each beneficiary's 30th, 35th, and 40th birthdays. The time period germane to appellant's claim in this case is from the summer of 1999, when Merrill Lynch, through its representative James Lesinski,[1] began to manage the trust, until October 14, 2001, when appellant turned 40. At the time the trust was transferred to Merrill Lynch, it was valued at approximately $327,539, and Lesinski invested the assets almost exclusively in high-technology stocks. In less than one year, the portfolio's value skyrocketed to over $600,000. However, in early 2000, the technology market collapsed, and by appellant's 40th birthday, when he was to collect his final portion of the principal, the assets were valued at approximately $37,394.

{¶ 4} On July 9, 2003, appellant filed a complaint against the trustee, alleging that the trustee had breached his fiduciary duties, resulting in drastic losses in the trust assets.[2] On January 6, 2006, the court denied appellant's motion for partial summary judgment and granted the trustee's motion for summary judgment. It is from these two rulings that appellant appeals.

## II

{¶ 5} In his first assignment of error, appellant argues that "the trial court erred when it granted summary judgment to defendant-appellee." Specifically, appellant argues that the trustee fell below the standard of care required of a fiduciary in three aspects: (1) delegating management of the trust; (2) establishing the scope of the delegated authority and monitoring the trust; and (3) acting unilaterally, without the participation of the cotrustee, in violation of the trust. We will discuss the first two subarguments regarding delegation together and will then discuss the subargument concerning the cotrustee's participation.

---

1. For at least 11 years prior to Merrill Lynch's involvement, Lesinski managed the trust as a representative of Everen Securities, Inc. In July 1999, he began working for Merrill Lynch.

2. Appellant also commenced an arbitration proceeding against Lesinski and Merrill Lynch, pursuant to the National Association of Securities Dealers Dispute Resolution, seeking recovery for the same losses.

{¶ 6} Appellate review of granting summary judgment is de novo. Pursuant to Civ.R. 56(C), the party seeking summary judgment must prove that (1) there is no genuine issue of material fact, (2) they are entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264.

*Introduction*

{¶ 7} Before tackling this case on its merits, we will briefly review trust-investment law. In general, trust-investment law is governed by the prudent-investor rule. R.C. 1339.53(A) states as follows: "A trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distributions requirements, and other circumstances of the trust. In satisfying this requirement, the trustee shall exercise reasonable care, skill and caution." A trustee has broad discretion as to how he or she will "invest and manage trust assets," in accordance with the terms of each trust. See R.C. 2109.371. With the goals of protecting trust beneficiaries and settlor objectives in mind, legal scholars have set broad guidelines for trustees' conduct: "[T]he rules must be general and flexible enough to adapt to changes in the financial world and to permit sophisticated, prudent use of any investments and courses of action that are suitable to the purposes and circumstances of the diverse trusts to which the rules will inevitably apply." Restatement of the Law 3d, Trusts: Prudent Investor Rule (1992) Chapter 7, Topic 5, introduction. However, we recently discouraged unfettered discretion:

> It is well established that "so long as a trustee executes the trust in good faith and within the limits of sound discretion, a court of equity will not interfere with that discretion or undertake to substitute its discretion therefor." Nevertheless, even where a trust instrument confers broad authority upon a trustee, a trustee cannot "take advantage of liberal provisions of a trust instrument to relieve himself from the legal responsibility of a fiduciary under the law." Thus, in addition to the instrument creating the trust, the authority of a trustee is limited by statutory and common law.

(Citations omitted.) *Biddulph v. DeLorenzo*, Cuyahoga App. No. 83808, 2004-Ohio-4502, 2004 WL 1902725.

{¶ 8} We end our overview by establishing some basic concepts: A fiduciary is "one who must exercise a high standard of care in managing another's money or property." Black's Law Dictionary (7th Ed.1999) 640. A trustee owes a fiduciary duty to the trust beneficiaries. See *In re Trust of Papuk* (Mar. 7, 2002), Cuyahoga App. No. 80078, 2002 WL 366519. See, also, R.C. 2109.01. "A claim of breach of a fiduciary duty is basically a claim of negligence, albeit

involving a higher standard of care." *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235.

## A. Delegation

{¶ 9} The first subargument appellant makes under his first assignment of error is that the trustee breached his fiduciary duty when he delegated the management of the trust assets. Although a trustee is under a duty to personally perform the tasks involved in administering a trust, delegating these responsibilities to others is a common practice. See Restatement at 171. Pursuant to the Ohio Uniform Prudent Investor Act, a trustee may delegate the following investment and management functions, using reasonable care, skill, and caution: "1) [s]electing an agent; 2) [e]stablishing the scope and terms of the delegation consistent with the purpose and terms of the trust; [and] 3) [p]eriodically reviewing the agent's actions in order to monitor the agent's performance with the terms of the delegation." R.C. 1339.59(A).

### 1) Delegation—the act

{¶ 10} In the instant case, it is undisputed that the trustee delegated management of the trust to Lesinski. The terms of the trust afford the cotrustees the power and right to "employ, compensate, delegate discretionary powers to, and rely upon the advice and opinion of suitable agents and attorneys, but shall not be liable for their neglect, omission or wrongdoing if reasonable care is exercised in their selection." Although unclear, it does not seem as if appellant is seriously contesting the selection of Lesinski or Merrill Lynch as the delegate to manage the trust. Nonetheless, we conclude that a reputable investment firm and a registered financial advisor are appropriate selections under R.C. 1339.59(A)(1). Appellant does argue, however, that there are genuine issues of material fact regarding the scope of the delegation and the reviewing and monitoring of Lesinski's actions.

### 2) Delegation—the scope

{¶ 11} Pursuant to R.C. 1339.59(A)(2), the scope of the delegation must be consistent with the purpose and terms of the trust in question. Generally, the purpose of the trust in the instant case is as follows: the settlor intended to provide the beneficiaries with funds and/or property at staggered times throughout their lives. To effectuate this goal, the trust gave cotrustees various rights and powers, which, in part, define the terms of the trust. These terms include affording cotrustees broad discretion to "invest and reinvest without being limited by statutory or judicial investment restrictions."

{¶ 12} Appellant argues that Lesinski claims that the scope of the trustee's delegation was twofold: (a) to invest in securities that Merrill Lynch recommended and (b) to keep appellant apprised of all investments. Appellant further argues that the scope of the trustee's delegation was monistic—turn the investing over to Lesinski and Merrill Lynch, giving Lesinski total discretion to manage the money. Appellant urges us to believe that these positions are inconsistent, creating a genuine issue of material fact and thus precluding summary judgment. We disagree.

{¶ 13} The term of the trust at issue is, broadly, to invest. Delegating this task to a reputable investment firm, and more specifically, to a registered financial advisor, is certainly an action consistent with appellant's grandfather's intentions. Whether the scope of delegation was further defined by the two mandates Lesinski claims is of no consequence. In other words, from a legal standpoint, the inconsistency that appellant points to is not material to the case at hand. Both Lesinski's and the trustee's recollection of the delegation's scope fall within the ambit of R.C. 1339.59(A)(2).

### 3) Delegation—review and monitor

{¶ 14} Pursuant to R.C. 1339.59(A)(3), a trustee must periodically review and monitor the delegate to see that his actions and performance are consistent with the terms of the trust. In other words, in the instant case, the trustee must assure that Merrill Lynch, via Lesinski, is satisfactorily investing. Appellant makes an argument regarding subsection (A)(3) similar to the one he made regarding subsection (A)(2)—that Lesinski and the trustee are telling two different stories regarding how many times, if at all, the two met or spoke and what exactly was said. We note that the trustee was 82 years old at the time of his deposition and that he is a trustee for approximately 15 different family trusts. The trustee's recollection of the specifics of the trust at issue and his dealings with Lesinski is somewhat vague.

{¶ 15} Appellant argues that the inconsistencies between Lesinski's and the trustee's testimony regarding the trustee's monitoring of Lesinski's investment of trust assets create a genuine issue of material fact precluding summary judgment. We first establish that it is uncontested that the trustee received at least quarterly and annual statements concerning the trust, some of which were prepared by Merrill Lynch and some of which were prepared by the accountant the trustee retained to manage the family trusts. While Ohio law has defined and analyzed many duties of a trustee,[3] the R.C. 1339.59(A)(3) phrase "periodical-

---

3. See, e.g., *Stevens v. Natl. City Bank* (1989), 45 Ohio St.3d 276, 281, 544 N.E.2d 612 (holding that a trustee "is under a duty to the beneficiaries to distribute the risk of loss within the trust

ly review and monitor the agent" is untested. Thus, the unanswered question before us is how much reviewing and monitoring is required by a trustee to satisfy the mandates of R.C. 1339.59(A)(3)? The plain meaning of the operative words are (1) review—"to go over or examine critically or deliberately" and (2) monitor—"to watch, keep track of, or check usually for a special purpose." Merriam–Webster's Collegiate Dictionary (11th Ed.2003) 1067, 801. However, secondary legal authority on this point is scarce and wide ranging:

> If in the exercise of reasonable diligence, the trustee discovers conditions adversely affecting the security of the investment, it is bound to take "all lawful means with reasonable promptness to recover the debt and prevent loss to the estate, which a man of fair judgment, reasonable care and prudence, would take under such circumstances." The circumstances under which the trustee's actions are to be judged must be considered "under the rule that when one knows and what one in the exercise of ordinary care and prudence ought to know are regarded as equivalent in the law." If it becomes clear or should have become clear that the investment is no longer proper for a trust, it is the duty of the trustee to dispose of it within a reasonable time.

(Citations omitted.) *Pub. Serv. Co. v. Chase Manhattan Bank, N.A.* (1983), 577 F.Supp. 92, 104. See, also, *Citizens & S. Natl. Bank v. Haskins* (1985), 254 Ga. 131, 135–136, 327 S.E.2d 192 (holding that although a trustee is not required to "watch the ticker as a speculator would, * * * the question of the quality of judgment in holding or disposing of trust assets * * * coupled with evidence of failure to review or monitor the trust estate and refusal to meet with co-trustees" presents a jury question on whether or not the trustee breached his duty); *Shriners Hosps. for Crippled Children v. Gardiner* (1987), 152 Ariz. 527, 528, 733 P.2d 1110, citing Restatement of the Law 2d, Trusts (1959) 227 (holding that a trustee who lacks investment experience must seek expert advice regarding investing trust assets, while exercising his own judgment); *Estate of Miller* (1964), 230 Cal.App.2d 888, 907, 41 Cal.Rptr. 410 (holding that "[i]t is obvious that the discretion given to a trustee is never unlimited or arbitrary, such as might be exercised by an oriental prince out of the Arabian Nights, sitting at the city gate and exercising his own uncontrolled whim as to what is appropriate and just").

{¶ 16} An example of the alleged inconsistency regarding the trustee's monitoring and reviewing of Lesinski's performance follows. At deposition, Lesinski stated, "I would be in and out of [the trustee's] office several times a month, and we would discuss any number of things. He had his own personal accounts with

---

by prudent diversification, limiting the proportion of the total assets which are invested in any one stock or class of securities"); *Natl. City Bank v. Noble,* Cuyahoga App. No. 85696, 2005-Ohio-6484, 2005 WL 3315034 (holding that the specific terms of a trust may abrogate the statutory duty to diversify).

me, plus a variety of other trust accounts and these irrevocable trusts, and he got the performance reports and the monthly statements and confirms on the trades." However, the trustee's memory of their working relationship differs. Asked how often he spoke with Lesinski during the time frame in question, the trustee responded, "Very seldom." The trustee also testified that although he did not scrutinize the account statements, he reviewed them. In addition, the trustee said, "And I want to explain that when I put somebody in charge of something, you don't second guess them. So whatever he—if he was in charge, that's, you either get rid of him or leave it go."

{¶ 17} Once again, we do not believe that this "inconsistency" goes to the heart of the matter under analysis. There is no evidence in the record that Lesinski did anything with the trust assets that was inconsistent with the trust objective "to invest." There is also no evidence that the trustee failed in his duty to review and monitor. While it is safe to say that the trustee was not heavily involved in the duties delegated to Lesinski, nothing suggests that the trustee "fell asleep at the wheel," so to speak. Investing in stocks is an inherently risky endeavor, and investing in high technology stocks increases that risk, while at the same time increasing the potential gain. Many people lost money in the stock market, particularly in high-tech stocks, at the dawn of the new millennium. See, e.g., James J. Eccleston, Bet on Hedging as Area of Growth, Chicago Daily Law Bulletin, Mar. 7, 2005, at 6 (noting that "workers at companies such as Microsoft, Cisco and WorldCom * * * became paper millionaires, for a time, only to see their wealth disappear (and large tax bills appear) in the wake of the Tech Wreck"). However, because of the speculative and unpredictable nature of both the stock market in general and the staying power of start-up, high-tech companies, many investment strategies were to stay the course, even in the midst of the so-called Tech Wreck. See, e.g., Kuney, Dot–Com and High–Technology Companies: Nuclear Waste and Chapter 11? (2000), 17 The Computer Lawyer 8, 25, quoting Jack Welch, former CEO of General Electric in the May 1, 2000 edition of Fortune Magazine (suggesting that while some high-tech companies may be playing "in the ninth inning," as far as the technology revolution as a whole, the game is just beginning).

{¶ 18} In summary, we find the following regarding whether the trustee was negligent[4] in delegating investing of the trust assets (1) the trustee owed appellant a fiduciary duty of care, (2) the trustee did not breach that duty, and (3)

---

4. The elements of negligence are (1) plaintiff owed defendant a duty of care, (2) defendant breached that duty, and (3) the breach directly and proximately caused harm to the plaintiff. *Texler v. D.O. Summers Cleaners & Shirt Laundry Co.* (1998), 81 Ohio St.3d 677, 693 N.E.2d 271.

the collapse of a volatile stock market caused, at least in part, the trust assets to diminish.

## B.  Cotrustee

{¶ 19} The second and final subargument that appellant makes under his first assignment of error is that the trustee breached his fiduciary duty in acting without the cotrustee, in violation of the trust terms.  Per the terms of the trust, it is clear that all decisions and actions pertaining to the trust were to be approved by both cotrustees.  The most glaring piece of evidence appellant presents showing that this was violated is the paperwork authorizing the trust assets to be transferred from Everen to Merrill Lynch.  The paperwork, which hails from Merrill Lynch, is signed by Lesinski and *signed by appellant, acting as trustee, rather than as beneficiary*.  The paperwork does list the trustee as a fiduciary, but his signature does not appear on the documents, and he denies being involved in completing them.  Pursuant to the terms of the trust, both the trustee and cotrustee should have acted together in transferring the assets to Merrill Lynch.  See, generally, R.C. 5807.03.  Therefore, these transfer documents, which are dated between May 29 and June 10, 1999, indicate an unauthorized transfer of the trust assets.

{¶ 20} In addition, on February 22, 2000, a Key Bank vice president sent a letter to Lesinski acknowledging that Key Bank had succeeded attorney Conway as cotrustee of the trust and requesting that the assets be transferred to Key Trust Company.  The record is silent as to a response from Lesinski.  However, there is an internal Merrill Lynch communication concerning the trust, dated March 15, 2001, that reads as follows: "Please submit a bank resolution from Key Bank stating who has authority to act as fiduciary on behalf of the bank, a Code 3535 signed by both the representative of Key Bank and Hugh O'Neill and a new CRA agreement signed by the representative of the bank and Hugh O'Neill as trustees."  A careful review of the record in the instant case reveals no such documents.

{¶ 21} What does rear its ugly head from the record is that Lesinski, apparently in conjunction with appellant, made essentially unauthorized trades using the trust assets.  That Lesinski and appellant were "in cahoots" is evidenced by appellant's testimony that he spoke with Lesinski multiple times each week and listened in on Merrill Lynch conference calls regarding investing in high-tech stocks.  Additionally, Lesinski testified that as related to both the trust and appellant's personal investments, "[appellant] was the most serviced client I had in terms of communication.  * * * I spent more time with him than just about anyone else I dealt with because of the complex nature of what was happening in his life and the number of accounts he had."  That the trades were

essentially unauthorized is evidenced by the fact that the trust assets were transferred to Merrill Lynch without the written consent of either cotrustee, but with the impotent "consent" of appellant.

{¶ 22} Lesinski and appellant invested in risky, high-tech stocks and when they lost big, nearly depleting the trust assets, appellant pointed his finger at everyone else and Lesinski dodged his responsibility. The trustee, consistent with his involvement since at least 1999 when cotrustee Conway died, remained unaware of any questionable activity. Regarding whether the trustee was negligent in acting without the cotrustee, we once again find that there was no breach of fiduciary duty. In fact, concerning appellant's key piece of evidence—the documents transferring the trust account to Merrill Lynch—we find that the trustee did not act at all. Appellant signed his name on the document and falsely listed himself as trustee; he cannot now claim that one cotrustee was negligent in acting without the other, when the evidence shows that he attempted to act for both of them. We cannot find any other decisions made or actions taken by trustee regarding the trust after cotrustee Conway died. Therefore, to the extent that cotrustee Key Bank did not act, appellant's allegations are properly asserted against Key Bank rather than the trustee. Accordingly, as a matter of law, the trustee was not negligent, and the court did not err when it granted his motion for summary judgment. Appellant's first assignment of error is overruled.

## III

{¶ 23} In his second and final assignment of error, appellant argues that "the trial court erred when it denied plaintiff-appellant's motion for partial summary judgment." In this motion, appellant requested that the court grant summary judgment in his favor on the issue of liability only, concerning the trustee's alleged negligence in delegating trust investment duties and acting without the cotrustee. In short, appellant's summary judgment motion covers the same issues as his arguments under review in this appeal. In light of the extensive analysis regarding the first assignment of error, we conclude that the same analysis can be applied to appellant's motion for partial summary judgment. Thus, because appellant's negligence claims fail as a matter of law, it was proper for the court to deny appellant's summary judgment motion, and his second assignment of error is overruled.

Judgment affirmed.

COONEY, P.J., and McMONAGLE, J., concur.