DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, Wayne Savings Community Bank ("the Bank"), appeals from the judgment of the Wayne County Court of Common Pleas awarding summary judgment to Defendant-Appellees, Michael J. Gardner and Sue Brown. This Court reverses.
 I {¶ 2} Before her death on September 25, 2004, Elizabeth W. Smith executed a living trust and a will, which devised her entire estate to the trust. Smith named herself as the trustee of her living trust and Gardner and Brown as successor co-trustees. Additionally, she nominated Gardner and Brown as co-executors of her will. Smith's trust named various members of her family, who are not parties to this litigation, as the beneficiaries of her property.
 {¶ 3} The facts remain unclear as to what transpired after Smith's death. A memorial service was planned for Smith in October. Brown apparently took it upon herself to clean *Page 2 
Smith's home in preparation for the arrival of Smith's relatives. While cleaning the home, Brown discovered copies of Smith's will and trust declaration. Brown claimed that she eventually read the will and trust, but could not remember when she did so or how she eventually came to meet with Gardner about them. Brown further claimed that she decided to contact Attorney Louis Keating after bills started arriving at Smith's house because Brown noticed that Attorney Keating's signature appeared on both the will and trust. According to Brown, she initially met with Attorney Keating on her own, and Attorney Keating instructed her to search Smith's house for the original will and trust. Brown never found the originals and could not remember whether she met with Attorney Keating again on her own for advice. She alleged that Attorney Keating never informed her that she had to set up an estate for Smith or the process by which she could do so. Yet, she later stated that when an approximately $77,000 insurance check arrived for Smith she took the check to Attorney Keating because she assumed that Attorney Keating was helping. As the months went by, Brown continued to clean Smith's house, found renters for an apartment that Smith had owned, gave away certain items of Smith's personal property, and sorted Smith's mail, which Brown had forwarded to her own address.
 {¶ 4} Brown averred that she and Gardner met with Attorney Keating after he decided to accept his position as co-trustee. Yet, Brown could not remember when the meeting occurred or what was discussed. Brown recalled that Attorney Keating had her "sign a paper" at the meeting, but she could not remember what she signed or the purpose for signing it. She also recalled that she, Attorney Keating, and Gardner traveled to Smith's safety deposit box at one point to see if Smith had placed the originals of her will and trust in the box. Although the originals were not in the safety deposit box, the box did contain several stock certificates. Brown and Gardner were never able to take the certificates, however, because the bank would not allow *Page 3 
them to do so until they had formal letters of appointment as executors from the probate court. Brown and Gardner never obtained the letters. According to Brown, she never attempted to obtain the letters, speak with another attorney, or otherwise seek advice because she assumed that Gardner was handling everything.
 {¶ 5} According to Gardner, he did not know that Smith had appointed him as a successor co-trustee or nominated him as a co-executor until he met with Attorney Keating and Brown in March 2005. Yet, he also stated that he spoke with Attorney Keating at Smith's memorial service and she "implied" that he played a role in Smith's estate planning. Gardner averred that he spoke with Brown prior to meeting with Attorney Keating, learned that Smith had desired him to serve as a successor co-trustee and co-executor, and struggled with whether or not to accept these positions. Gardner finally decided to accept his position as co-trustee in March 2005 when he and Brown met with Attorney Keating.
 {¶ 6} Gardner averred that it was his "impression" that Attorney Keating was representing the trust. Gardner claimed that Attorney Keating gave him federal identification numbers for the trust and estate and told him that she would find someone to speak with him concerning the taxes. After she did so, however, Gardner claimed that Attorney Keating did not contact him again for approximately six months despite numerous voicemail and e-mail messages that he left her. Finally, in September 2005, Gardner stated that he met with Brown and Attorney Keating. At the meeting, Attorney Keating had Gardner and Brown sign some papers and indicated that she was preparing documents to have the copy of Smith's will admitted to probate.
 {¶ 7} At some point, Gardner decided to contact a friend of his, Attorney Donald Brezine, and ask him to find out whether Attorney Keating had filed any documents with the *Page 4 
probate court. Attorney Brezine apparently checked the court's docket and told Gardner that nothing had been filed. Gardner stated that he never told Attorney Keating that he was contacting another lawyer because he was frustrated with her. He stated that "[he] figured if [Attorney Keating] billed us, [he] could argue with her then," but that Attorney Keating never sent a bill. Gardner thought that Attorney Brezine was responsible for an application to probate a copy of Smith's will being filed with probate, but he could not remember if Attorney Brezine had him or Brown sign anything.
 {¶ 8} During his time as a co-trustee, Gardner managed some of Smith's stock certificates, which Brown had discovered in Smith's house and brought to Gardner.[1] Gardner was never able to access the stock certificates locked in Smith's safety deposit box, however, because he never sought letters of authority from the probate court. He also never took any action with respect to several U.S. Savings Bonds that Brown had discovered in Smith's house because the bonds were in Smith's name. In addition to Attorney Brezine, Gardner stated that he contacted Herb Lemaster, his personal CPA, to question him about filing taxes on behalf of Smith's estate and trust. Lemaster apparently told Gardner to wait until the estate was settled to file IRS taxes because there was "a good chance [he'd] be forgiven on the penalties[.]" Lemaster also apparently sent a letter to Attorney Keating on Gardner's behalf, but Gardner thought that Lemaster never received an answer. *Page 5 
 {¶ 9} Before the probate court approved the filing of the copy of Smith's will, Gardner and Brown decided that they no longer wished to be co-trustees. They resigned as co-trustees of Smith's trust on September 12, 2006. That same day, the Bank accepted the position of trustee. The Bank subsequently brought suit against Gardner and Brown for breach of fiduciary duty and negligence, claiming that they both owed a fiduciary duty to Smith's trust as successor co-trustees and breached that duty by failing to probate her estate, to file federal and state estate and income tax returns, and to timely present and surrender the stock certificates in Smith's safety deposit box. Brown filed a counterclaim against the Bank as well as a cross-claim for indemnification against Gardner.
 {¶ 10} On January 15, 2008, Gardner filed a motion for summary judgment as to the Bank's claims. On February 19, 2008, Brown filed her own motion for summary judgment as to the same claims. The Bank responded in opposition to both motions. On March 14, 2008, the trial court awarded summary judgment to Gardner and Brown and indicated that there was no just reason for delay. The Bank now appeals from the trial court's summary judgment award and raises one assignment of error for our review.
 II Assignment of Error "THE TRIAL COURT ENTERED (sic) AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT TO APPELLEES BROWN AND GARDNER ON TRUSTEE WAYNE SAVINGS' CLAIMS THAT BROWN AND GARDNER BREACHED THEIR FIDUCIARY DUTIES TO THE SMITH TRUST."
 {¶ 11} In its sole assignment of error, the Bank argues that the trial court erred in awarding summary judgment to Brown and Gardner. We agree. *Page 6 
 {¶ 12} This Court reviews an award of summary judgment de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105. We apply the same standard as the trial court, viewing the facts of the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. Viock v. Stowe-Woodward Co. (1983),13 Ohio App.3d 7, 12.
 {¶ 13} Pursuant to Civ. R. 56(C), summary judgment is proper if:
 "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and pointing to parts of the record that show the absence of a genuine issue of material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-93. Specifically, the moving party must support the motion by pointing to some evidence in the record of the type listed in Civ. R. 56(C). Id. Once this burden is satisfied, the non-moving party bears the burden of offering specific facts to show a genuine issue for trial. Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact. Henkle v.Henkle (1991), 75 Ohio App.3d 732, 735.
 {¶ 14} A trustee owes a fiduciary duty to the beneficiaries of the trust that he has been chosen to administer. See In re Trust ofBernard, 9th Dist. 24025, 2008-Ohio-4338, at ¶ 20. "A `fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."Farmers State Bank v. Followay, 9th Dist. No. 07CA0011, 2007-Ohio-6399, *Page 7 
at ¶ 15, quoting In re Termination of Emp. of Pratt (1974),40 Ohio St.2d 107, 115. A trustee must "exercise reasonable care and skill in administering [a] trust and preserving the trust property" for the interest of the beneficiaries. Dejaiffe v. KeyBank USA Natl. Assn., 6th Dist. No. L-05-1191, 2006-Ohio-2919, at ¶ 16, citing Cassner v. Bank OneTrust Co., N.A., 10th Dist. No. 03AP-1114, 2004-Ohio-3484, at ¶ 28 and Restatement of the Law 2d, Trusts (1959), Sections 169-177. A trustee violates his fiduciary duties when he, either through his acts or omissions, fails to exercise the same level of care and skill in managing the trust property that a reasonable person would exercise managing their own property. Dejaiffee at ¶ 17. See, also, In re FirstNatl. Bank of Mansfield (1974), 37 Ohio St.2d 60, 63-66 (finding trustee liable when it failed to take action to recover wrongfully dispersed trust property).
 {¶ 15} In their respective motions for summary judgment, Brown and Gardner both admitted that they accepted their positions as co-trustees of Smith's trust after her death and owed fiduciary duties to the trust beneficiaries. They both argued, however, that their duties did not flow to Smith's estate, so they had no duty to probate her will or manage the estate property. Specifically, they argued that they never accepted their nominations as co-executors of Smith's will and declined their appointment as such before the probate court approved the will. They also argued that they never breached their trust duties because they employed and reasonably monitored agents to perform on behalf of the trust during their time as co-trustees. Because Brown and Gardner filed separate motions for summary judgment, we will examine each of their motions independently to determine whether the trial court erred in awarding them judgment.
Brown's Motion for Summary Judgment {¶ 16} Brown relied upon copies of the following items in support of her motion for summary judgment: (1) Smith's will; (2) Smith's trust declaration; (3) e-mail correspondence *Page 8 
between Attorney Keating and Gardner; (4) an application for authority to administer Smith's estate, signed by Brown and Garner and filed on June 30, 2006; and (5) a notice of resignation of trustee that Brown and Garner signed on September 12, 2006.
 {¶ 17} Initially, we note that none of the items that Brown attached to her motion constitute Civ. R. 56(C) evidence and that she failed to incorporate any of these items by reference through a properly framed affidavit based on personal knowledge. See Civ. R. 56(C) (limiting the type of evidence in support of summary judgment motions to pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact); Rowe v.Striker, 9th Dist. No. 07CA009296, 2008-Ohio-4654, at ¶ 15-17. This Court has held that a trial court has the discretion to either consider or ignore improper Civ. R. 56 evidence when the opposing party fails to object to the same. Richardson v. Auto-Owners Mut. Ins. Co., 9th Dist. No. 21697, 2004-Ohio-1878, at ¶ 29. Yet, "[u]nless there is some indication to the contrary, it will not be presumed that a court considered matters which were prima facie improper simply because the court was free to do so, for this would presume irregularity by the court." (Emphasis omitted.) Biskupich v. Westbay Manor Nursing Home
(1986), 33 Ohio App.3d 220, 222-23. See, also, Walther-Coyner v.Walther (June 2, 2000), 2d Dist. No. 18131, at *4; Chambers v. St.Mary's School (June 27, 1997), 11th Dist. No. 96-G-2013, at *2. The trial court did not specify what evidence it relied upon in determining that Brown was entitled to summary judgment. As such, we will not presume that the trial court considered any of Brown's improper evidence in support of her argument that no genuine issues of material fact existed. See Biskupich, 33 Ohio App.3d at 222-23. The only remaining evidence in the record to which Brown referred in her motion was her own deposition and *Page 9 
Gardner's deposition. Thus, we must consider whether this deposition testimony alone could sustain an award of summary judgment in Brown's favor.
 {¶ 18} Our review of the deposition testimony convinces us that genuine issues of material fact exist as to whether Brown owed and breached a fiduciary duty. Brown admitted that after Smith's death she cleaned Smith's house, gave away items of Smith's personal property to Smith's friends, forwarded Smith's mail to her own house, personally paid several of the electric and utility bills from Smith's house, helped Gardner and Attorney Keating access Smith's safety deposit box by locating the keys at Smith's house and accompanied them to the bank, rented out an apartment that Smith owned, and deposited the rental checks into Smith's trust account. This Court has recognized that "[f]iduciary relationships may arise from a formal agreement or de facto from an informal relationship, if the parties understand that a special trust or confidence has been reposed." Crow v. Fred Martin MotorCo., 9th Dist. No. 21128, 2003-Ohio-1293, at ¶ 11. The fact that the probate court never formally appointed Brown as the co-executor of Smith's estate does not mean that she did not owe a duty.
 {¶ 19} Brown indicated that she read Smith's will and trust declaration. Thus, she was aware that Smith's will devised the entirety of her remaining estate to her trust and that the trust provided for the beneficiaries named therein. Brown also was aware that Smith had certain property left in her estate that she neglected to transfer to the trust during her lifetime (i.e. the stock certificates in her safety deposit box). By not seeking to probate Smith's will or affirmatively relinquishing this responsibility to someone else, Brown prevented the marshalling of all of Smith's assets. Accordingly, Brown prevented the beneficiaries of Smith's trust, to whom she owed a fiduciary duty, from benefitting from these assets. Moreover, Brown's own deposition testimony establishes that she took actions consistent with that of a co-trustee and co-executor. *Page 10 
After she read the copies of Smith's will and trust, she contacted Attorney Keating and met with her several times, personally paid electrical and utility bills owed by Smith's estate, and signed an application for authority to administer Smith's estate, which was filed on June 30, 2006. Given all of the foregoing, we cannot conclude that Brown met her initial Dresher burden and demonstrated that no genuine issues of material fact existed as to whether she had a duty to probate the copy of Smith's will and gather all of her assets for the benefit of the trust beneficiaries.
 {¶ 20} We also cannot conclude that Brown met her Dresher burden regarding the issue of whether she breached her fiduciary duty. Brown repeatedly asserted in her deposition that she "assumed" Gardner was handling everything. She claimed that she could not recall multiple items such as how many times she met with Attorney Keating, what instructions she received, what documents she signed, and what effect those documents were to have. While an individual who owes a fiduciary duty may seek the assistance of others, a fiduciary may not simply abrogate the entirety of their responsibilities by assuming that others will complete them. See O'Neill v. O'Neill, 8th Dist. No. 87656,2006-Ohio-6426, at ¶ 8-18; Beacon Mut. Indem. Co. v. Stalder (1954), 95 Ohio App. 441, 446-47. Because genuine issues of material fact exist, the trial court erred in awarding Brown summary judgment on the Bank's claims.
Gardner's Motion for Summary Judgment {¶ 21} In support of his motion for summary judgment, Gardner relied upon copies of the following items: (1) Smith's will; (2) Smith's trust declaration; (3) e-mail correspondence between Attorney Keating and himself; (4) a letter from his accountant, Lemaster, to Attorney Keating dated September 26, 2005, on which Lemaster carbon copied Gardner; and (5) various probate filings including Gardner's and Brown's application to probate Smith's will and *Page 11 
application for authority to administer her estate. Gardner attached an affidavit to his motion in which he incorporated all of the foregoing items by reference pursuant to Civ. R. 56. See Rowe at ¶ 15-17.
 {¶ 22} As with Brown, we cannot say that Gardner met hisDresher burden and proved that no genuine issue of material fact existed as to whether he owed and breached a fiduciary duty. Gardner had reason to know that the beneficiaries of Smith's trust, to whom he owed a duty, would benefit from the filing of Smith's will and the marshalling of all of her remaining assets. His own deposition testimony indicates that he took several actions, which imply that he understood the extent of his fiduciary duties. For instance, Gardner sought the advice of Attorney Keating, Attorney Brezine, and his CPA and managed several of Smith's stock certificates (other than those contained in her safety deposit box). He also signed and filed an application to probate Smith's will. These actions are inconsistent with his assertion that he did not think that he owed a duty to Smith's estate. Accordingly, genuine issues of material fact remain regarding the issue of duty.
 {¶ 23} As to the issue of breach of duty, Gardner's evidence in support of his motion for summary judgment does not demonstrate the clear lack of a breach on his part. Gardner claimed that Attorney Keating agreed to represent the trust, but he later stated that it was merely his "impression" that she would do so. He also admitted that Attorney Keating never billed him or Smith's estate. Moreover, while he claimed that he repeatedly called and e-mailed Attorney Smith to no avail, Gardner's sole evidence in support of that proposition runs contrary to his assertion. Gardner's own evidence shows that Attorney Keating e-mailed him to remind him about paying Smith's estate tax and setting up a checking account for the trust. When Gardner responded to the e-mail with additional questions, the time stamp of Attorney Keating's e-mail *Page 12 
shows that she replied the next day. Thus, Gardner's own evidence suggests that Attorney Keating responded quickly when Gardner actually posed her a question. Our review of Gardner's evidence convinces us that he did not meet his Dresher burden with regard to whether he breached his fiduciary duty.
 {¶ 24} Both Brown and Gardner had the ability to disclaim their roles as co-trustees and co-executors when they discovered that Smith had named them in her will and trust. Neither did so, however, and genuine issues of material fact exist as to whether Brown and Gardner owed a fiduciary duty and breached that duty by failing to probate Smith's will and marshal all of her assets in a timely manner. See Dejaiffee
at ¶ 17 (providing that fiduciary breaches his duties when, by omission, he fails to exercise the same level of care that a reasonable person would exercise in managing their own property). The Bank's sole assignment of error has merit.
 III {¶ 25} The Bank's sole assignment of error is sustained. The judgment of the Wayne County Court of Common Pleas, is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 13 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellees.
SLABY, P. J. DICKINSON, J. CONCUR
[1] We note that it is unclear exactly what actions Gardner took with respect to the stocks. In his deposition, Gardner referred to the stocks being "invested," "sold," and "traded." He stated, "I'm not sure, I think [AG Edwards] just traded [the stock] for, ah, no, I think they just were paid, I think they just got cash from, ah, ah, there was a cash deal, there was not a stock swap. * * * [S]o we transferred [the stock] to an account and AG Edwards is specifically designed for this kind of purpose, a package that AG Edwards has." Nevertheless, Gardner took it upon himself to manage the stock in some manner. *Page 1